UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDDIE ROSS, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO:    18-11277** |
| **WILBERTO DEJARNETTI** | **SECTION: "G" (4)** |

ORDER

Before the Court is a **Motion for Sanctions (R. Doc. 110)** filed by Defendant Dejarnetti seeking sanctions against Plaintiff's counsel Tim Kappel ("Kappel") for violations of the Protective Order when Kappel uploaded portions of Dejarnetti's video deposition to YouTube and embedded the link in a publicly filed document on the Pacer server. This motion is opposed R. Doc. 114. This motion was set for submission on December 16, 2020 and was heard via videoconference. R. Doc. 123.

I.    **Background**

On November 20, 2018, Plaintiff Freddie Ross, Jr. ("Ross"), known in the music and entertainment industry as "Big Freedia", filed this copyright action seeking a declaration of rights in connection to certain sound recordings, musical compositions, and choreographic work. R. Doc. 1. Ross alleges that in 2014 he hired Dejarnetti to create stage choreography for some of Ross's songs, namely—"Just Be Free Intro", "NO Bounce",  "Explode", "Shake Session Medley", "Dangerous", "Best Beeleevah", and "Drop" (Collectively "Choreographic Works"). *Id.* Dejarnetti ultimately became a character on Ross's reality television series, *Queen of Bounce*. *Id.*

In 2017, Ross and Dejarnetti suffered a falling-out. *Id.* Ross alleges the breakdown of this relationship was due to the outlandish demands of Dejarnetti, such as giving Dejarnetti credit as co-author and producer of the songs "Training Day", "Best Beeleevah", "You Already Know", and $100 Bills" (Collectively "Musical Works"). *Id.* Ross further alleges  Dejarnetti demanded $500 per month

in continued use fees and that Dejarnetti refused to deliver certain music videos Ross had commissioned and paid for. *Id.*

Ross now seeks a declaration that Dejarnetti's mere presence at the recording studio does not confer Dejarnetti any authorships rights, title, or interest where he did not make any copyrightable contributions to the Musical Works. *Id.* Ross further alleges that while he worked with Dejarnetti and his dancers to create the Choreographic Works, their respective contributions merged into an inseparable and interdependent parts of a unitary whole. *Id.* As such, with regard to the Choreographic Work, Ross contends that, as a joint author, he is entitled to make use of the entire composition without Dejarnetti's permission or consent, and without further compensation. *Id.* Ross also alleges breach of contract based on Dejarnetti's failure to perform based on his refusal to deliver the edited, or unedited, video files. *Id.*

On November 24, 2020 at 11:54 p.m., Defendant Dejarnetti's counsel, Mark E. Andrews, filed a Motion to Compel. R. Doc. 101. Appended to that motion were two exhibits, a Services Agreement for Sound Recordings between Ross and Dejarnetti and Big Freedia's Exclusive Recording Agreement with Asylum in redacted version. *See* R. Doc. 101-1. Both documents were designated by the Plaintiff as confidential pursuant to the protective order. *See id.* On December 1, 2020, Plaintiffs filed a motion for sanctions against Defendant's counsel, Mark E. Andrews ("Andrews"), stemming from Andrews's filing the confidential contract and recording agreement documents into the public record. R. Doc. 108.

In response, also on December 1, 2020, Defendant filed his own Motion for Sanctions, which is the subject of this order. R. Doc. 110. Defendant complains among other things that Plaintiff embedded confidential video deposition into public pleadings and on YouTube in violation of the Protective Order; Plaintiff improperly shared audio files with nonexperts in violation of the Protective Order; and Plaintiff has obstructed the discovery process by (1) withholding documents, (2) refusing

to attend an in-person deposition, and (3) improperly wholesale designating documents as confidential simply because counsel was present at business meetings. *Id.* Due to these indiscretions, Defendant seeks an order imposing unspecified sanctions against the Plaintiff and Plaintiff's counsel. *Id.*

Plaintiff opposes Defendant's motion and argues that the motion is retaliatory and overtly meritless. R. Doc. 114. Plaintiff contends no confidential documents were embedded into the motion for partial summary judgment, he consulted with an expert on the audio files within the confines of the protective order, he has always been available for a video deposition that utilizes the same Covid-19 protocols the Court ordered for Dejarnetti's deposition, and his counsel is not an officer of any of his businesses. *Id.* As such, the Plaintiff seeks an order denying the allegations because they are meritless. *Id.* Plaintiff further proposes that the Court impose additional sanctions against Defendant for filing a motion unsupported by any evidence. *Id.*

## I.      Standard of Review

Federal Rule of Civil Procedure ("Rule") 37 authorizes courts to appropriately respond to and deal with parties that have disobeyed discovery orders. Fed. R. Civ. P. 37; *Chilcutt v. U .S.*, 4 F.3d 1313, 1319–20 (5th Cir. 1993). A court's "discretion in fashioning appropriate sanctions for parties who disobey their orders is quite broad, though not unlimited." *Id.* at 1320.

The Fifth Circuit has noted that sanctions under Rule 37 are "predicated upon the presence of such factors as willful disobedience, gross indifference to the right of the adverse party, deliberate callousness, or gross negligence." *Dorsey v. Academy Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir.1970); *see also Marrocco v. General Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992) (reasoning that "sanctions are proper upon a finding of willfulness, bad faith, or fault on the part of the noncomplying litigant.").

Rule 37(b)(2)(A) provides that if a party fails to obey an order to provide discovery, the Court may: (1) direct that the facts be established as the prevailing party claims; (2) prohibit the disobedient party from introducing information into evidence or supporting or opposing claims or defenses; (3) strike the pleadings; or (4) dismiss the action in whole or in part. Fed. R. Civ. P. 37(b)(2)(A). Additionally, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); *see also* Fed. R. Civ. P. 37(d)(1)(A)(ii). Finally, while "the Federal Rules do not explicitly provide an avenue to sanction attorneys who fail to comply with discovery orders . . . there is no doubt" that a court may exercise its inherent powers to sanction discovery abuses and to discipline attorneys who engage in obstructive behavior. *Elloie v. Allstate Ins. Co.*, No. CIVA 07-4434, 2008 WL 4747214, at *3 (E.D. La. Oct. 17, 2008) (citing *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993)).

**II. Analysis**

The Fifth Circuit supports the imposition of Rule 37(b) sanctions for violation of Rule 26(c) protective orders. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 489 (5th Cir. 2012) (citing *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983) (holding that Rule 37(b)(2) authorizes the court to impose sanctions for disobeying a discovery order); *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 911 (9th Cir.1986) (upholding the court's grant of sanctions under Rule 37(b) for violation of a protective order); *Poliquin v. Garden Way, Inc.*, 154 F.R.D. 29, 31–33 (D. Me. 1994) (imposing sanctions of attorney's fees and costs pursuant to Rule 37(b) for violations of a protective order)).

In this case, the Court adopted a Joint Umbrella Protective Order to guide discovery in this case. R. Doc. 53. This Protective Order is intended to protected documents and information produced or exhibited by and among the parties to this action relating to trade secrets or other confidential research, development, or commercial information are deemed confidential pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. *See id.* The Consent Protective Order also provides that "[a] party may challenge the objection of confidentiality by motion, which must be filed within thirty (30) days [and] [i]f no motion is filed within thirty (30) days, the challenge to the objection of confidentiality is waived." R. Doc. 53, p. 2.

### A.  Plaintiff's Filed YouTube Video Clips Embedded In Public Pleading

Defendant, in his motion for sanctions, argues on October 20, 2020, Plaintiffs filed their Motion for Partial Summary Judgment (R. Doc. 88), in which four times did Plaintiff's counsel embed links to a YouTube clips of Dejarnetti's deposition testimony. R. Doc. 114.  Defendant contends these audio files were marked as highly confidential but were made public by Plaintiff's posting the audio files on YouTube. R. Doc. 110-1, p. 2. Defendant further contends that there was no reason to upload the clips of YouTube, a third-party video site, where the video clips were filed with the Court manually on a green flash drive. *Id.*

Plaintiff, in opposition, insists that no confidential documents were contained in the motion for partial summary judgment. R. Doc. 114, p. 5. Plaintiff contends that the audio files were Ross's from three years ago, and not Dejarnetti's. *Id.* In addition, the Plaintiff contends that the videoclips are not entitled to any sort of heightened protection as the portions of the deposition excerpted and uploaded were not designated as confidential .

 Plaintiff's motion for summary judgment contains four audiovisual clips of Dejarnetti taken on August 20, 2020. R. Doc. 88-1, p. 15-16. These audiovisual clips depict Dejarnetti listening to each

song at issue in this proceeding and raising his hand each time he heard his creative contributions to the Composition or Recording concerned. *Id.*

As an initial matter, the Court notes that even though the links are embedded within the motion for summary judgment, when the links are clicked on a YouTube screen pops-up that indicates that the video is unavailable because the video is private.[1] While the Defendant contends the links were initially set to public, Plaintiff's counsel assured the Court that the audiovisual clip were uploaded to his firm's YouTube page as unsearchable and unlisted. More importantly, however, nothing in the clips were designated as confidential and protected by the umbrella protective order.

In addition, Defendant's argument that Plaintiff was intending to publicize this case by uploading these audiovisual clips to Pacer to alert people/press who have been following this case of the YouTube clip is also uninspiring. First, it appears to the Court that Plaintiff uploaded the clips for ease of access to judicial officials. Second, where the document of information is not protected pursuant to Federal Rule of Civil Procedure 26(c) or some other privilege, the Court engages in the practice of transparency, which is why persons are able to download motions and order from the Pacer server to begin with. As such, the Court declines to impose sanctions because Plaintiff uploaded these audiovisual clips to YouTube, which did not violate the Protective Order.

B. **Expert Examination and Modification of Audio Files**

In addition, Defendant complains that Plaintiff took the audio files produced under the protective order for purposes of being examined by an expert, and had unauthorized person or persons make modifications to those protected audio files, and then played those modified audio files to

---

[1] *See, e.g.,*
https://www.youtube.com/watch?v=3V2_TCfnwXw;
https://www.youtube.com/watch?v=axBOPi7enz8;
https://www.youtube.com/watch?v=LXpnL124sOI; and
https://www.youtube.com/watch?v=CeiGu5_pHEU.

Defendant at his deposition. R . Doc 110-1, p. 2. Defendant further explains that these persons fall outside the scope of the protective order's scope, which allows experts review documents, as the deadlines for identifying experts and submitting expert reports has long past, and Plaintiffs did not submit anything. *Id.*

Plaintiff concedes that he did not designate an expert to testify at trial; however, he argues the scheduling order does not require disclosure of consulting experts not expected to testify at trial. R. Doc. 114, p. 2. Plaintiff further contends that any allegation that the audio files have been modified is completely untrue and unsupported by any evidence. R. Doc. 114, p. 3.

The Protective Order provides "[a]ny documents, discovery responses, testimony, materials or information designated or marked 'Confidential' may be disclosed by the receiving party . . . [to] Independent experts and consultants and their employees. R. Doc. 53, p. 3. In addition, the Protective Order provides "[n]o documents or information designated as "Confidential" shall be provided to any expert or consultants or the employees of either until the expert, consultant or employee has read this Order and has agreed to abide by its terms by singing a copy of the attached "Certification." *Id.*

The Protective Order permits disclosure to independent experts, consultants, and their employees. The Protective Order in no way limits permissible disclosure to only testifying experts. The Court is, therefore, of the opinion that the Protective Order is drafted broad enough to encompass consulting experts even if that person ultimately does not submit an expert report or designated as an expert witness. As the Court finds that there is no violation of the protective agreement, the Court declines to impose sanctions for Plaintiff's consultation with non-testifying experts.

### C.  Plaintiff's Refusal to Sit for In-Person Deposition

Defendant also complains about discovery not being forthcoming in this case. R. Doc. 110-1, p. 3. Beyond withholding documents, Defendant complains that Plaintiff Freddie Ross, Jr. a/k/a Big

7

Freedia will not make herself available for deposition. *Id.* Defendant complains Plaintiff refuses to participate in a deposition in-person, and instead insists on taking the deposition via video link, despite her making weekly public appearances. *Id.*

Plaintiff also contends that he has never refused to sit for a deposition, but that Defendant's counsel withdrew the deposition notice when Ross insisted that the same Covid-19 Protocols Court-ordered and implemented for Dejarnetti's deposition be followed for his deposition. *See* R. Doc. 64 (Protocol on the Taking of Remote Depositions).

Since the outset of the Covid-19 Pandemic this Court has refused to compel in-person attendance at depositions. *See Antares Maritime Pte Ltd. v. Board of Commissioners of the Port of New Orleans*, No. CV 18-12145, 2020 WL 7022752, at *3 (Roy, M.J.) (E.D. La. Nov. 30, 2020). This Court has also insisted that certain measures and protocols be instituted to protect deponents from the risks associated with this global deadly disease. *See id.*

In this situation, not only does the Court find Ross's conducted not sanctionable, but finds it recommended. The Court, therefore, declines to impose sanction for this conduct.

**D.  Plaintiff Wholesale Designation of Documents as Confidential**

Finally, Defendant complains that Plaintiff's counsel, personally, is an officer of Plaintiff's businesses and was personally involved, participating, and acting in the transactions and occurrences at issue in both the Complaint and the Counter-Complaint-Third-Party-Complaint, and has improperly designated almost everything as confidential due to his presence. R. Doc. 110-1, p. 5.

Plaintiff's counsel contends that these accusations that he is an officer of any of Ross's businesses is fabricated and a quick query on the Secretary of State's Business Filings show that to be patently false. R. Doc. 114, p. 4-5.

The Court first takes notice that it has reviewed the Louisiana Secretary of State's Business Filing site and neither Queen Diva Music, LLC nor Big Freedia Enterprises, LLC list Kappel as an officer or member.

Next, while the Court cautions Kappel on the applicability of privilege as in-house counsel in business or technical advice or management decisions, the Court at this juncture does not have enough information to decide whether the designation of documents was improper. *See Ruby Slipper Cafe, LLC v. Belou*, No. CV 18-1548, 2020 WL 4897905, at *9–10 (Roby, M.J.) (E.D. La. Jan. 8, 2020).[2] The Court simply does not have any documents to which it can assess confidentiality. The generalities of Defendant's motion leaves the Court weary of imposing sanctions, especially where much of this material was tendered to Defendant in July and he waited nearly half a year, until after the expiration of the discovery deadline, and far past the thirty-day challenge waiver adopted in the Protective Order, to complain about over-designations. Defendant here failed to diligently protect his right to challenge a confidentiality designation, file appropriate motions, and timely seek judicial intervention. As such, the Court declines impose sanctions for this conduct.

**E. Sanctions**

In the last line of his opposition, Plaintiff Mr. Dejarnetti's Motion for Sanctions is both beneath the dignity of the Court, and worthy of additional sanctions should the Court so choose. R. Doc. 114, p. 7. The Plaintiff neither gives authority for additional sanctions, although presumably referring to his pending Motions for Sanctions (R. Doc. 108), nor provides the Court a description of what those sanctions would look like.

The Court reminds the Defendant that he must have a good faith basis for filing motions. He should not let emotion or a desire to get even cloud his judgment. The Court expects that hastily filed

---

[2] The Court, however, notes that Defendant's concept of confidentiality appears to be conflated with those protections afforded to privileged documents.

9

motions will not be a problem going forth in this case. As this motion was denied in its entirety, and pursuant to Federal Rule of Civil Procedure 37, the Court awards Plaintiff payment of attorney's fees and costs associated with filing an opposition to this motion.

IV.     **Conclusion**

Accordingly,

**IT IS ORDERED** that Defendant's **Motion for Sanctions (R. Doc. 110)** is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Ross shall file a motion to fix attorney's fees into the record by **January 13, 2021**, along with: (1) an affidavit attesting to their attorney's education, background, skills, and experience; (2) sufficient evidence of rates charged on similar cases by other local attorneys with similar experience, skill, and reputation; and (3) the documentation required by Local Rule 54.2. Any opposition to the fee application shall be filed no later than **January 19, 2020**. The motion shall be set for submission on **January 27, 2021**, to be heard without oral argument.

New Orleans, Louisiana, this 18th day of December 2020.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**