UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**FREDDIE ROSS, JR.**                                   **CIVIL ACTION**

**VERSUS**                                                      **NO:    18-11277**

**WILBERTO DEJARNETTI**                           **SECTION: "G" (4)**

<u>**ORDER**</u>

Before the Court is a **Motion for Sanctions (R. Doc. 108)** filed by the Plaintiff Freddie Ross, Jr. seeking a sanctions order against Wilberto Dejarnetti's counsel, Mark Ed. Andrews, for alleged violations of the Court's Protective Order. The motion is opposed. R. Doc. 119. This motion was set for submission on December 16, 2020 and was heard via videoconference. R. Doc. 123. On December 22, 2020, Plaintiff filed a supplemental memorandum discussing another potential violation of the Protective Order. R. Doc. 135. Defendant responded to that memorandum. R. Doc. 137.

**I.**       <u>**Background**</u>

On November 20, 2018, Plaintiff Freddie Ross, Jr. ("Ross"), known in the music and entertainment industry as "Big Freedia", filed this copyright action seeking a declaration of rights in connection with certain sound recordings, musical compositions, and choreographic work. R. Doc. 1. Ross alleges that in 2014 he hired Dejarnetti to create stage choreography for some of Ross's songs, namely—"Just Be Free Intro", "NO Bounce", "Explode", "Shake Session Medley", "Dangerous", "Best Beeleevah", and "Drop" (Collectively "Choreographic Works"). *Id.* Dejarnetti ultimately became a character on Ross's reality television series, *Queen of Bounce*. *Id.*

In 2017, Ross and Dejarnetti had a falling-out. *Id.* Ross alleges that the breakdown of this relationship was due to the outlandish demands of Dejarnetti, such as giving Dejarnetti credit as co-author and producer of the songs "Training Day", "Best Beeleevah", "You Already Know",

and $100 Bills" (Collectively "Musical Works"). *Id.* Ross further alleges Dejarnetti demanded $500 per month in continued use fees and that Dejarnetti refused to deliver certain music videos Ross had commissioned and paid for. *Id.*

Ross now seeks a declaration that Dejarnetti's mere presence at the recording studio does not confer Dejarnetti any authorship rights, title, or interest where he did not make any copyrightable contributions to the Musical Works. *Id.* Ross further alleges that while he worked with Dejarnetti and his dancers to create the Choreographic Works, their respective contributions merged into an inseparable and interdependent parts of a unitary whole. *Id.* As such, with regard to the Choreographic Work, Ross contends that, as a joint author, he is entitled to make use of the entire composition without Dejarnetti's permission or consent, and without further compensation. *Id.* Ross also alleges breach of contract based on Dejarnetti's failure to perform based on his refusal to deliver the edited, or unedited, video files. *Id.*

On November 24, 2020 at 11:54 p.m., Defendant Dejarnetti's counsel, Mark E. Andrews, filed a Motion to Compel. R. Doc. 101. Appended to that motion were two exhibits, a Services Agreement for Sound Recordings between Ross and Dejarnetti and Big Freedia's Exclusive Recording Agreement with Asylum in redacted form. *See* R. Doc. 101-1. Both documents were designated by the Plaintiff as confidential pursuant to the protective order. *See id.*

At 8:37 a.m. the next day, November 25, 2020, Plaintiffs' counsel called the Court complaining that protected documents were publicly filed in violation of the protective order. By 8:40 a.m., the Court placed a temporary seal over the exhibits. That same day the documents were reviewed and an order was entered permanently sealing the documents. *See* R. Doc. 104.

Also, that same day, at 4:16 p.m., Defendant's counsel filed his Motion to Withdraw Exhibits Filed in Error and to File Corrected Exhibits (R. Doc. 105). Defendant's counsel

explained that he mistakenly filed the wrong version of the exhibits with the Motion to Compel Discovery and Disclosure (R. Doc. 101). R. Doc. 105. This early version of the Exhibits contained material claimed to be confidential because he had earlier anticipated that the designation would be challenged in accordance with the Protective Order. *Id.* However, Defendant's counsel ultimately decided to refrain from making such a challenge, and the documents claimed to be confidential were supposed to be removed from the exhibits. *Id.* The Court denied that motion based on the fact that a seal order had already been issued rendering the documents unavailable to the public. *See* R. Doc. 111.

On December 1, 2020, Plaintiff filed the instant motion for sanctions stemming from the filing of the documents designated as confidential. R. Doc. 108. Plaintiff argues that disqualification of Defendant's counsel would be in the Court's discretion, albeit Plaintiff's counsel himself admitting this would prejudice Dejarnetti for a wrong he did not commit. *Id.* Plaintiff ultimately seeks an order imposing monetary sanctions high enough in amount to deter future violations as well as requesting that Mr. Andrews be required to post a litigation bond to ensure that monetary sanctions derived from any future violations of the Protective Order can be satisfied. R. Doc. 108-1, p. 6.

Defendant Dejarnetti and his counsel, Mark E. Andrews, oppose the motion. R. Doc. 112. Andrews admits that he mistakenly uploaded the documents, however, he contends that his mistake was slight and not worthy of sanctions. *Id.* Andrews also contends that Plaintiff's counsel has made the similar mistakes—violation of the ESI Protocol. *Id.* Finally, Defendant's counsel contends that he is a solo practitioner, working on this case pro bono, and is not financially able to pay for any sanctions or post any bond. *Id.* Defendant, therefore, maintains that motion for sanctions should be denied. *Id.*

## II.     **Standard of Review**

Federal Rule of Civil Procedure ("Rule") 37 authorizes courts to sanction violations of its discovery orders. Fed. R. Civ. P. 37; *Chilcutt v. U .S.*, 4 F.3d 1313, 1319–20 (5th Cir. 1993). A court's "discretion in fashioning appropriate sanctions for parties who disobey their orders is quite broad, though not unlimited." *Id.* at 1320.

The Fifth Circuit has noted that sanctions under Rule 37 are "predicated upon the presence of such factors as willful disobedience, gross indifference to the right of the adverse party, deliberate callousness, or gross negligence." *Dorsey v. Academy Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970); *see also Marrocco v. General Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992) (reasoning that "sanctions are proper upon a finding of willfulness, bad faith, or fault on the part of the noncomplying litigant.").

Rule 37(b)(2)(A) provides that if a party fails to obey an order to provide discovery, the Court may: (1) direct that the facts be established as the prevailing party claims; (2) prohibit the disobedient party from introducing information into evidence or supporting or opposing claims or defenses; (3) strike the pleadings; or (4) dismiss the action in whole or in part. Fed. R. Civ. P. 37(b)(2)(A). Additionally, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified, or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); *see also* Fed. R. Civ. P. 37(d)(1)(A)(ii). Finally, while "the Federal Rules do not explicitly provide an avenue to sanction attorneys who fail to comply with discovery orders . . . there is no doubt" that a court may exercise its inherent powers to sanction discovery abuses and to discipline attorneys who engage in obstructive behavior. *Elloie v. Allstate*

*Ins. Co.*, No. CIV.A 07-4434, 2008 WL 4747214, at *3 (E.D. La. Oct. 17, 2008) (citing *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993)).

### III.   Analysis

The Fifth Circuit supports the imposition of Rule 37(b) sanctions for violation of Rule 26(c) protective orders. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 489 (5th Cir. 2012) (citing *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983) (holding that Rule 37(b)(2) authorizes the court to impose sanctions for disobeying a discovery order); *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 911 (9th Cir.1986) (upholding the court's grant of sanctions under Rule 37(b) for violation of a protective order); *Poliquin v. Garden Way, Inc.*, 154 F.R.D. 29, 31–33 (D. Me. 1994) (imposing sanctions of attorney's fees and costs pursuant to Rule 37(b) for violations of a protective order)).

In this case, the Court adopted a Joint Umbrella Protective Order to guide discovery in this case. R. Doc. 53. This Protective Order is intended to protected documents and information produced or exhibited by and among the parties to this action relating to trade secrets or other confidential research, development, or commercial information pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. *See id.*

Plaintiff argues that Andrews's violation of the Joint Protective Order warrants the imposition of sanctions. R. Doc. 108. Plaintiff contends that Defendant's counsel has admitted to violating the protective order but seeks to downplay its significance. R. Doc. 108-1. Plaintiff counsel also suggests that Defendant's counsel claim that the documents were mistakenly filed is not true. *Id.* Plaintiff finally argues that the contracts are entitled to protection as closely guarded negotiated instruments. *Id.*

Defendant, in opposition, contends the mistaken disclosure by Defendant's counsel was not intentional. R. Doc. 112. Defendant counsel also argues that the documents were so heavily redacted to protect from public disclosure. *Id.*

After the hearing, the Plaintiff filed a reply. *See* R. Doc. 125. In that reply, Plaintiff explained that, despite just having a Court hearing on the matter, Defendant's counsel again filed confidential information. *See id.* Specifically, Plaintiff contends that Defendant's counsel, Mark E. Andrews, took information from documents designated as confidential and produced in this case, and inserted it into a separate complaint, *Samuel Nicholas, III v. Adam J Pigott and Freddie Ross, Jr.*, in which Andrews represents the Plaintiff. *See Nicholas v. Pigott et al* (2:20-cv-03416-CJB-DPC) (R. Doc. 1). Defendant contends these repeated indiscretions call for greater sanctions to include monetary sanctions, the return of all "confidential information", and the disqualification of Andrews from further representation of Dejarnetti in the matter. R. Doc. 125.

Defendant, in a sur-reply, contends that the information included in the complaint was not just gathered from the documents produced as confidential but from other sources. *See* R. Doc. 137. Specifically, Defendant's counsel contends that the information is in the public domain, easily retrievable via a Google search. R. Doc. 137, p. 2. Defendant's counsel also contends that a search of Big Freedia's website provides the same information. R. Doc. 137, p. 4. Finally, Defendant's counsel contends that Plaintiff's attorney, Tim Kappel, and Big Freedia volunteered this information about the collateral copyright infringement case, the role of Asylum and East West Records, withholding of royalties, and the reality television show. R. Doc. 137, p. 5.

A. <u>**Violation of the Protective Order**</u>

In filing protected documents, the Protective Order instructs parties to refer to the Court's Standing Order referred to as Procedure for Filing Documents Under Seal in Civil Cases. R. Doc. 53, p. 4.

In *Smith & Fuller*, the Fifth Circuit considered a violation of a joint umbrella order entered to protect trade secrets and confidential information produced in discovery. *Smith & Fuller*, 685 F.3d at 487. The counsel disseminating the information conceded that they had violated the protective order but maintained that the dissemination was inadvertent. *Id.* In affirming the district court's decision to sanction disseminating counsel, the Fifth Circuit noted while there was no willful violation of the protective order, opposing counsel moved swiftly and vigorously moved for enforcement of the protective order, disseminating counsel understood the importance of complying with the order, dissemination of the protected information went to other lawyers who used the information to sue the producing party, and disseminating counsel had previously violated a similar protective order. *Id.* at 487–488.

Based on these circumstances, the Court found sanctions were appropriate in order to deter future violations of protective orders and to reflect the seriousness of protective orders. *Id.* at 488. The Court, therefore, ordered the disseminating party to reimburse opposing counsel for the attorneys' fees and expenses connected with the violation of the Protective Order to include the time expended investigating the violation, drafting various motions to enforce the Protective Order, preparing replies to the responses, coordinating and conferring with opposing counsel, and attending court hearings. *Id.* at 488, 490–91.

In this case, Defendant's counsel unequivocally violated the Consent Protective Order, this is undisputed. Andrews admits he did not follow the local rules that allow for the filing of

confidential documents under seal, and simply uploaded documents designated as confidential into the public record. At the hearing, Defendant's counsel asserted he never intended to file the confidentially designated documents, but mistakenly filed an earlier draft of the motion to compel, which include those documents. Still, the public upload violates the protective order, regardless of any previous intent to challenge the confidentiality of the documents.

Next, the Court considers whether Defendant's counsel violated the protective order by extracting information contained within documents designated as confidential and inserting them into publicly filed pleadings.

Plaintiff contends that in the Nicholas complaint, which is a completely unrelated case, Defendant's counsel alleges that Big Freedia was publishing works under an Exclusive Recording Agreement, known to be in effect 2017 to 2018, with Asylum Worldwide, LLC ("Asylum"). R. Doc. 125, p. 3; *see also Nicholas v. Pigott et al* (2:20-cv-03416-CJB-DPC) (E.D. La. 2020) (R. Doc. 1). Plaintiff suggests while it is known that Big Freedia works with Asylum, the fact that the agreement was exclusive was only given to Dejarnetti, and not Nicholas, pursuant to the Protective Order. *See id.*

Defendant's counsel, in opposition, contends that this information is knowledge within the public domain and that Big Freedia frequently speaks with others to include Dejarnetti about the parallel litigation, the contracts, and royalties at issue waiving the documents confidentiality. R. Doc. 137, p. 6.

The Court first notes that, whether filing a document in whole or extracting information from documents designated as confidential, the Defendant's counsel would have first needed leave of court as the public upload is a per se violation of the Protective Order. Next, the Court notes that the fact Big Freedia signed a contract with Asylum seems to be within the public domain. *See*

R. Doc. 137-2 (Google Search returning multiple hits that Big Freedia signed a deal with Asylum Records). Notwithstanding, after careful review of the search matches returned on Google and the language included on Big Freedia's Bio section of her website, the Court notes nothing mentions the exclusivity of the record agreement. *See* R. Docs. 137-2, 137-3. So, while the existence of the agreement cannot be protected as confidential, the terms and conditions of that agreement, which would include reference to the type of contract, can.

> Among other things, the Protective Order limits:
>
> [a]ll documents, transcripts, or other materials subject to this Order, and all information derived therefrom (including, but not limited to, all testimony, deposition or otherwise, that refers, reflects or otherwise discusses any information designated "Confidential" hereunder), shall not be used, directly or indirectly, by any person for any business, commercial or competitive purposes, *other than solely for the purpose of this litigation* and in preparation for trial in accordance with the provisions of this Order.

R. Doc. 53, p. 4 (emphasis added).

Here, it appears to the Court that Andrews is playing fast and loose with the information received in this case. The Court is not persuaded that Andrews received the information about the exclusive nature of the recording agreement from outside sources. In the absence of identifying another "public" sources that mentions the exclusivity of the agreement, the Court has no choice but to conclude that Andrews obtained this information through documents designated as confidential in this case. Moreover, Andrews's use of that information in a separate and distinct action violates the Protective Order.

### B. Necessary Sanctions

Thus, finding the Protective Order was violated, the Court must determine the sanctions are necessary to correct the violation and deter possible future violations.

"Sanctions under Rule 37 serve the dual function of reimbursing the moving party and deterring the violator of the discovery orders (as well as other potential violators)." *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017) (citing *Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1114 (5th Cir. 1986)). "Rule 37(b)(2) sanctions 'must be both just and specifically related to the claim at issue in the discovery order.'" *Id.* (citing *Vicknair v. Louisiana Dep't of Pub. Safety & Corr.*, 555 Fed.Appx. 325, 332 (5th Cir. 2014)). "The sanction imposed should be the least severe sanction adequate to achieve the proper functions of Rule 37(b)(2) under the particular circumstances." *Id.* (citations omitted).

"[E]ven an award of attorney's fees is penal in nature. *Wilbert v. Starr Indem. & Liab. Co.*, No. CV 16-11113, 2016 WL 7441156, at *2 (Engelhart, M.J.) E.D. La. Dec. 27, 2016) (citing *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 516 (5th Cir. 1985)) As the Fifth Circuit explained, such an award "it is designed to penalize those who engage in the charged conduct and to deter others who might be tempted to follow in similar conduct." *Id.* Importantly, when awarding attorney's fees, the Court can only order payment of those expenses actually "caused by the failure to comply." *Id.*

The Court first considers the severity of the violation. In determining the severity of the violation, the Court considers the actual harm. For 8 hours and 43 minutes, from 11:54 p.m. to 8:37 a.m. the following day, these documents were available to the public via the PACER server until the Court placed a seal over the document, in large part due to the diligence of Plaintiff's attorney. However, just because the documents were available does not mean that the documents were accessed. The Court has reviewed the logs and analyzed the public downloads of those documents and determined that only one time during that time period, at 5:37 a.m. on November 25, 2020, that someone using Timothy R.W. Kappel (Plaintiff's attorney)'s login information

accessed those documents. No other member of the public viewed or downloaded these documents. The Court, therefore, finds that there was no harm.

The Court tailors the sanction to the harm caused. *See Smith & Fuller*, 685 F.3d at 490 ("A party can be held responsible only for the reasonable attorneys' fees and expenses caused by the party's misconduct."). The Court first notes "[t]he Protective Order was granted specifically to protect [Ross's] trade secrets and confidential information from incidents such as this. *Id.*

Still, in *Smith & Fuller*, the Court had evidence that the dissemination, even while accidental, had actually been viewed and accessed by the public. *Id.* at 487 (discussing how disseminating counsel's firm mistakenly copied the confidential and trade secret protected information onto compact discs that were distributed widely to many personal injury lawyers attending a conference sponsored by Attorneys Information Exchange Group, Inc. that was specifically about obtaining discovery from the producing party). Moreover, the producing party found out about the violation through third-parties personal injury lawyers who sued the producing party after receiving such information. *Id.* Finally, the Court noted that the violation sanction was not the disseminating party's first violation of the protective order. *Id.*

Here, the Court is of the opinion that the public upload of the documents was likely due to a lack of diligence and proper cautiousness, but inadvertent. There is no suggestion that Defendant's counsel publicly uploaded the documents in an attempt to gain some sort of tactical advantage. Second, the violation was almost immediately rectified. No investigation was needed to find the violation; no great effort had to be taken to correct the violation; and a claw back of the documents from persons not parties to the protective order was unnecessary. In fact, no member of the general public ever accessed the documents before the situation was ameliorated.

The Court reiterates the sequence of events—the public upload occurred in the late hours on November 24, 2020, was rectified and sealed a couple hours later on the November 25, 2020, and this motion was filed less five days later on December 1, 2020. Plaintiff filed the instant motion for sanctions before assessing whether harm had actually occurred as a result of Defendant's counsel's mistaken filing. Thus, while Plaintiff's counsel's action in bringing the error to the attention of the Court effectively eradicated any threat of exposure, it appears to the Court that Plaintiff acted prematurely in filing the motion for sanctions.

The Court reminds counsel that "[c]omplete good faith compliance with protective orders is essential to modern discovery practices and counsel must temper their zeal in representing their clients with their overreaching duty as officers of the court." *Lunareye, Inc. v. Gordon Howard Assocs., Inc.*, 78 F. Supp. 3d 671, 676 (E.D. Tex. 2015). The purpose of Rule 37 is to promote the exchange of information and cooperation amongst opposing counsel. Moreover, the Court is not in the job of sanctioning every possible discovery violation.

Notwithstanding, the Court must consider sanctions for deterrent value where the Court held a sanction's hearing on this exact issue on Wednesday, December 16, 2020 at 10:30 a.m., which warned Andrews to be careful about his public filings, and less than nine (9) hours later he again publicly uploaded information protected as confidential in this case. *See Nicholas* (2:20-cv-03416-CJB-DPC) (R. Doc. 1) (filed on December 16, 2020 at 7:56 p.m.). As the Court previously explained, the nature of the contract was protected even if the existence of it was not. It is the nature of the contract that was not in the public domain, which confirms that Andrews secured that very information from the confidential contract in this case in violation of the Protective Order. Like in *Smith & Fuller*, the Court in this situation has found repeated violations of the Protective Order. The Court, therefore, finds that sanctions are necessary to encourage future compliance

with the Protective Order. As such, the Court will award the Plaintiff attorney's fees incurred in filing this motion.

### C. Disqualification, Return of Confidential Information, Litigation Bond

The Court next turns to Plaintiff's request to disqualify Defendant's counsel, Mark E. Andrews; have his confidential information returned, and have Andrews post a litigation bond in the event Andrews commits future violation of the Protective Order for which monetary sanctions would also be warranted.

"Motions to disqualify are substantive in nature and are thus decided under federal law." *Asgaard Funding LLC v. ReynoldsStrong LLC*, 426 F. Supp. 3d 292, 296–97 (N.D. Tex. 2019) (citing *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995)). "When considering motions to disqualify, courts should first look to the local rules promulgated by the local court itself," *Asgaard*, 426 F. Supp, 3d at 296–97 (citing *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009)). In addition, the Fifth Circuit recognizes the American Bar Association (ABA)'s Model Rules of Professional Conduct as the "national standards to consider in reviewing motions to disqualify." *Id.* Accordingly, the following four ethical canons should be consulted in determining whether to disqualify counsel: (1) the Local Rules, (2) the Model Rules, (3) the state rules, and (4) the Model Code." *Lange v. Orleans Levee Dist.*, No. CIV.A. 97-987, 1997 WL 570689, at *2 (Clement, D.J.) (E.D. La. Sept. 12, 1997).

The Fifth Circuit has noted "[a]ll in all, disqualification is a severe sanction." *Asgaard*, 426 F. Supp 3d at 296–97. "Depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration." *Id.* (quoting *U.S. Fire Ins. Co.*, 50 F.3d at 1313). "Courts must consider the particular facts of each case in the

context of the relevant ethical guidelines and with deference to a litigant's rights." *Id.* (citations omitted).

The rule of disqualification is not mechanically applied in the Fifth Circuit. *Church of Scientology of California v. McLean*, 615 F.2d 691, 693 (5th Cir. 1980) (citing *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 173 (5th Cir. 1979)). To warrant disqualification there must be a showing of a reasonable possibility that some specifically identifiable impropriety occurred, and the likelihood of public suspicion must be weighed against the interest in retaining counsel of one's choice and weighed against the Codes of Professional Responsibility. *Id.*; *see also Traylor v. City of Amarillo, Tex.*, 335 F. Supp. 423, 425 (N.D. Tex. 1971) (noting "the conduct of attorneys should not be weighed with 'hairsplitting nicety.'"). "[T]he party seeking to disqualify an attorney must thereafter bear the burden of proving that disqualification is warranted." *Cramer v. Sabine Transp. ¥Co.*, 141 F. Supp. 2d 727, 730 (S.D. Tex. 2001) (citation omitted); "That burden is heavy." *Domain Prot., LLC v. Sea Wasp, LLC*, No. 4:18-CV-792, 2019 WL 6131298, at *5 (E.D. Tex. Nov. 19, 2019*), clarified on denial of reconsideration*, No. 4:18-CV-792, 2019 WL 6829634 (E.D. Tex. Dec. 13, 2019)

The Fifth Circuit considers motions to disqualify most frequently in the context of conflicts of interest. *See, e.g., Asgaard*, 426 F. Supp, 3d 292; *Cramer*, 141 F. Supp. 2d 727; *Church of Scientology of California*, 615 F.2d 691. Disqualification is also considered in instances when an attorney has to juggle dual roles of counsel and fact witness. *See Domain*, 2019 WL 6131298, at *5; *see also Cunningham v. Hamilton Cty., Ohio*, 527 U.S. 198, 201 (1999) (noting disqualification permitted where counsel was a material fact witness to case).

In this situation, the Court simply cannot find that Plaintiff has carried his burden of showing disqualification is warranted. Plaintiff cites no law which would support the imposition

of disqualification, depriving Defendant Dejarnetti of representation that he is receiving pro bono, pursuant to a Rule 37 Motion for Sanctions. While perhaps Plaintiff is attempting to suggest that there is a conflict of interest due to Andrews's ongoing representation of Nicholas in a parallel case against Plaintiff Ross, the Court is provided no grounds on which to base its analysis. The Court, therefore, denies Plaintiff's motion to the extent is seeks Defendant Dejarnetti's counsel, Mark E. Andrews, be disqualified in this action.

Likewise, Plaintiff has provided no law for requiring the return of all confidential information or requiring opposing counsel to post a litigation bond, and the Court has found no precedent to support the imposition of such. As such, the Court similarly denies Plaintiff's motion to the extent that it seeks to claw back the confidential information that has already been produced and Andrews post a litigation bond.

## IV.     Conclusion

Accordingly,

**IT IS ORDERED** that the Plaintiff's **Motion for Sanctions (R. Doc. 108)** is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the motion is **GRANTED** to the extent that Plaintiff is awarded attorney's fees and cost incurred in the filing of this motion.

**IT IS FURTHER ORDERED** that the motion is **DENIED** to the extent it seeks to disqualify Defendant's counsel, Mark E. Andrews, will not be disqualified; a posting of a bond; and the return the confidential information produced in this action.

**IT IS FURTHER ORDERED** that Plaintiff Ross shall file a motion to fix attorney's fees into the record by January 20, 2021, along with: (1) an affidavit attesting to their attorney's education, background, skills, and experience; (2) sufficient evidence of rates charged on similar cases by

other local attorneys with similar experience, skill, and reputation; and (3) the documentation required by Local Rule 54.2. Any opposition to the fee application shall be filed no later than January 26, 2021. The motion shall be set for submission on February 3, 2021, to be heard **without oral argument**.

New Orleans, Louisiana, this 4<u>th</u> day of January 2021.

_____
**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**