UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDDIE ROSS, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-11277** |
| **WILBERTO DEJARNETTI** | **SECTION: "G"(4)** |

### ORDER AND REASONS

Plaintiff Freddie Ross, Jr. ("Ross") filed this action against Defendant Wilberto Dejarnetti ("Dejarnetti") pursuant to the United States Copyright Act, 17 U.S.C. § 101, to declare Ross's rights in connection with specific sound recordings, musical compositions, and choreographic works.[1] Dejarnetti brings counterclaims against Ross and third-party claims against Big Freedia Enterprises LLC and Queen Diva Music LLC pursuant to the United States Copyright Act to declare Dejarnetti's rights in connection with specific sound recordings, musical compositions, and choreographic works.[2] Before the Court is Ross, Big Freedia Enterprises LLC, and Queen Diva Music LLC's (collectively, "Movants") "Motion to Strike."[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion in part and denies the motion in part.

---

[1] Rec. Doc. 1 at 1.

[2] Rec. Doc. 77.

[3] Rec. Doc. 78. Paragraph 8 of the amended counterclaim and third-party complaint filed by Dejarnetti states that "[d]istinctions among [Ross] personally and the LLCs Big Freedia Enterprises, LLC and Queen Diva Music, LLC were not closely observed in the dealings at issue here." Rec. Doc. 77 at 2. Accordingly, the Court refers to counter-defendant Ross and third-party defendants Big Freedia Enterprises, LLC, and Queen Diva Music, LLC, collectively as "Movants" for purposes of this Order.

1

# I. Background

### A. *Factual Background*

According to the complaint, Ross is a recording actor, author, and performer known as "Big Freedia."[4] Ross and Dejarnetti allegedly worked together on various aspects of Ross's entertainment career.[5] Specifically, the parties allegedly collaborated to create stage choreography for Ross's songs, including "Just Be Free Intro," "NO Bounce," "Explode," "Shake Session Medley," "Dangerous," "Best Beeleevah," and "Drop" (collectively, the "Choreographic Works").[6] Ross also allegedly allowed Dejarnetti to direct and film a number of music videos (collectively, the "Music Videos").[7] Ross asserts that he paid thousands of dollars for Dejarnetti's services in connection with the Choreographic Works and the Music Videos.[8]

Furthermore, Ross asserts that Dejarnetti sought to involve himself in Ross's songwriting sessions.[9] Yet, according to Ross, Dejarnetti would typically arrive at the recording studio uninvited and offer unsolicited opinions concerning Ross's music.[10] Dejarnetti's conduct allegedly resulted in Ross terminating the parties' working relationship.[11] When Dejarnetti learned that Ross intended to terminate the parties' relationship, Dejarnetti supposedly started

---

[4] Rec. Doc. 1 at 1.

[5] *Id.* at 2.

[6] *Id.*

[7] *Id.* at 3, 6.

[8] *Id.* at 3.

[9] *Id.*

[10] *Id.*

[11] *Id.*

making "outlandish claims and demands" to Ross—including claiming credit as a co-author and producer of certain songs, namely "Training Day," "Best Beeleevah," "You Already Know," and "$100 Bills" (collectively, the "Musical Works").[12]

Yet, according to Ross, Dejarnetti "contributed nothing to the Musical Works that would come close to copyrightable subject matter."[13] Ross seeks a declaratory judgment concerning his ownership rights in the Choreographic Works and Musical Works.[14] Ross also seeks to recover damages resulting from Dejarnetti's alleged breach of contract in connection with the Music Videos.[15]

### B.  *Procedural Background*

On November 20, 2018, Ross filed a complaint against Dejarnetti in this Court.[16] Ross encountered multiple difficulties serving the complaint upon Dejarnetti, resulting in multiple extensions of time to serve.[17] On August 23, 2019, the Court granted Ross's "Motion to Effect Service Through Alternative Means."[18] On September 5, 2019, a summons issued to Dejarnetti was returned as executed.[19]

---

[12] *Id.* at 3–4.

[13] *Id.*

[14] *Id.* at 4–5.

[15] *Id.* at 6.

[16] *Id.* at 1.

[17] *See* Rec. Doc 4; Rec. Doc. 6; Rec. Doc. 6-1; Rec. Doc 7; Rec. Doc. 8; Rec. Doc. 8-1; Rec. Doc. 9; Rec. Doc. 10.

[18] Rec. Doc. 11.

[19] Rec. Doc. 12.

On October 16, 2019, Dejarnetti filed a motion to dismiss.[20] On April 16, 2020, the Court denied Dejarnetti's motion to dismiss.[21]

On May 2, 2020, Dejarnetti filed an "Answer, Defenses, & Counterclaim with Jury Demand" in response to the complaint filed by Plaintiff.[22] On August 5, 2020, with leave of Court, Dejarnetti filed "Amended Counterclaim & Third-Party Claims, with Jury Demand" against Movants.[23] In the amended counterclaim, Dejarnetti brings claims against Movants pursuant to the United States Copyright Act to declare Dejarnetti's rights in connection with specific sound recordings, musical compositions, and choreographic works.[24] Dejarnetti seeks a declaratory judgment in part to "identify and establish the co-ownership, co-authorship, and creative contributions" allegedly made by Dejarnetti to the Musical Works.[25] Dejarnetti also brings claims against Movants for breach of contract and tortious interference with contract under Louisiana law.[26]

On August 13, 2020, Movants filed the instant motion to strike."[27] In the motion, Movants move the Court to strike certain "prejudicial allegations" from Dejarnetti's amended

---

[20] Rec. Doc. 16.

[21] Rec. Doc. 42.

[22] Rec. Doc. 44.

[23] Rec. Doc. 77.

[24] *Id.*

[25] *Id.* at 20.

[26] *Id.*

[27] Rec. Doc. 78.

counterclaim.[28] Dejarnetti filed an opposition to the motion to strike on September 9, 2020.[29] On September 14, 2020, with leave of Court, Movants filed a reply to the opposition filed by Dejarnetti.[30]

## II. Parties' Arguments

### A. *Movants' Arguments in Support of the Motion to Strike*

Movants urge the Court to strike "certain prejudicial allegations" set forth in Dejarnetti's amended counterclaim pursuant to Federal Rule of Civil Procedure 12(f).[31] Specifically, Movants allege that Dejarnetti's amended counterclaim contains "numerous allegations of material fact that were based exclusively on conduct and statements made during the course of the parties' prior attempts to settle this long-running dispute" in violation of Federal Rule of Evidence 408.[32] In the motion to strike, Movants provide examples of allegations that Movants argue "rely on statements and conduct that took place in the context of compromise negotiations."[33] For example, Movants point to Dejarnetti's allegation that Ross's attorney discussed an option for a "one-time total buyout of all rights to choreography" with Dejarnetti and/or his counsel in October 2018.[34] For this reason, Movants request that the Court "strike any allegation which references or relies on the parties' conduct or statements made in the course of attempting to resolve this

---

[28] Rec. Doc. 78-1 at 3.

[29] Rec. Doc. 83.

[30] Rec. Doc. 86. On October 20, 2020, Movants filed a motion for partial summary judgment seeking summary judgment on claims brought by Dejarnetti in the amended counterclaim. Rec. Doc. 88. That motion is currently pending before the Court.

[31] Rec. Doc. 78 at 1.

[32] Rec. Doc. 78-1 at 3.

[33] *Id.* at 5–6.

[34] *Id.* at 5.

well-worn dispute."[35]

B.     *Dejarnetti's Arguments in Opposition to the Motion to Strike*

In opposition to the motion to strike, Dejarnetti argues that Federal Rule of Evidence 408 does not apply to the instant dispute for two reasons.[36] First, Dejarnetti relies on non-binding case law from other federal circuits and federal district courts to argue that Rule 408 is inapplicable when the claim is based upon "some wrong that was committed in the course of settlement discussions"[37] Dejarnetti contends that the claim here is based upon an alleged breach of contract that occurred during settlement negotiations.[38]

Second, Dejarnetti argues that Rule 408 does not apply because the communications referenced in the allegations represent business negotiations as opposed to settlement negotiations.[39] Specifically, Dejarnetti alleges that the "business negotiations were conducted to establish precise [payment] amounts and percentages . . . and there was no dispute as to whether [Dejarnetti] had performed work or as to whether [Ross] was required to pay something for the performed work."[40] In addition, Dejarnetti argues that "the few references to [Rule] 408 . . . in the correspondence" do not transform the business negotiations into compromise negotiations.[41]

Dejarnetti also argues that the complaint filed by Ross "makes extensive reference to and relies upon the exact transactions evidenced by the exact communications" that Movants seek to

---

[35] *Id.* at 7.

[36] Rec. Doc. 83.

[37] *Id.* at 3 (citing *Carney v. American University,* 151 F.3d 1090, 1095–96 (D.C. Cir. 1998)).

[38] *Id.* at 2–3.

[39] *Id.* at 4–6.

[40] *Id.* at 4.

[41] *Id.* at 5–6.

strike from Dejarnetti's amended counterclaim.[42] Dejarnetti contends that "[Ross's] own claims cannot be supported nor can they be answered without reference to the communications that [Movants] seek[] to exclude."[43] For these reasons, Dejarnetti asks the Court to deny Movants' motion to strike.[44]

C. *Movants' Arguments in Further Support of the Motion to Strike*

In reply, Movants set forth three arguments in further support of the motion to strike.[45] First, Movants argue that the communications at issue were "attempts to resolve a dispute," not "mere business negotiations."[46] Second, Movants reject Dejarnetti's argument that "the absence of 'mutual intention' to engage in 'formal settlement negotiations' renders Rule 408 inapplicable."[47] In support, Movants point to a text message exchange in which Movants allege that Dejarnetti invoked Rule 408.[48] Third, Movants assert that Dejarnetti relies on the settlement communications at issue "solely to establish the validity of his claim to authorship, credit and royalties – exactly the sort of conduct Rule 408 prohibits."[49]

### III. Legal Standard

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading

---

[42] *Id.* at 6–8.

[43] *Id.* at 8.

[44] *Id.*

[45] Rec. Doc. 86.

[46] *Id.* at 2.

[47] *Id.* (citing Rec. Doc. 83 at 4).

[48] *Id.*

[49] *Id.* at 3.

7

an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[50] Generally, motions to strike are viewed with disfavor and infrequently granted.[51] Fifth Circuit precedent dictates that a motion to strike "should be granted only when the pleading to be stricken has no possible relation to the controversy."[52] A district court's decision on a motion to strike is reviewed for abuse of discretion.[53]

Federal Rule of Evidence 408 governs the admissibility of settlement agreements.[54] Rule 408 prohibits evidence of compromise negotiations, as well as conduct or statements made during compromise negotiations, from being admitted "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction."[55] In *Lyondell Chemical Co. v. Occidental Chemical Corp.*, the Fifth Circuit explained two rationales underlying Rule 408:

> These exclusionary powers are grounded in two rationales. First, the relevancy of settlement communications is thought to be suspect because they may have been an attempt to purchase peace rather than an admission of liability. Second, and perhaps most importantly, the rule's exclusion of settlement evidence furthers public policy by promoting the voluntary settlement of disputes, which would be discouraged if evidence of compromise were later used in court.[56]

Although it does not appear that the United States Court of Appeals for the Fifth Circuit

---

[50] Fed. R. Civ. P. 12(f).

[51] *Augustus v. Board of Public Instruction of Escambia, Fla.*, 306 F.2d 862, 868 (5th Cir. 1962); *see also Turner v. Ehticon Endo–Surgery, Inc.*, 2003 WL 22872103 (E.D. La. Dec. 2, 2003) (Berrigan, J.) (noting that motions to strike are disfavored and courts grant them on an infrequent basis).

[52] *Augustus*, 306 F.2d at 868 (internal citation omitted).

[53] *Cambridge Toxicology Group, Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007).

[54] Fed. R. Evid. 408.

[55] Fed. R. Evid. 408(a)(1).

[56] 608 F.3d 284, 294–95 (5th Cir. 2010) (internal citations and quotation omitted).

8

has addressed this issue, other federal district courts have granted motions to strike allegations containing material from settlement discussions.[57]

### IV. Analysis

Movants urge the Court to strike several allegations set forth in Dejarnetti's amended counterclaim pursuant to Federal Rule of Civil Procedure 12(f).[58] Specifically, Movants contend that Dejarnetti's amended counterclaim contains "numerous allegations of material fact that were based exclusively on conduct and statements made during the course of the parties' prior attempts to settle this long-running dispute" in violation of Federal Rule of Evidence 408.[59] In opposition, Dejarnetti argues that Federal Rule of Evidence 408 does not apply to the instant dispute.[60] Dejarnetti also argues that the complaint filed by Ross "makes extensive reference to and relies upon the exact transactions evidenced by the exact communications" that Movants now seek to strike from Dejarnetti's amended counterclaim.[61]

In the instant motion, Movants identify several "prejudicial allegations" referencing settlement discussions that it seeks to have stricken from the amended counterclaim filed by

---

[57] *See, e.g.*, *Philadelphia's Church of Our Savior v. Concord Twp.*, 2004 WL 1824356, at *2 (E.D. Pa. July 27, 2004) ("While Rule 408 does not apply to pleadings directly, . . . allegations in a complaint may be stricken, under Rule 12(f), as violative of these policies."); *United States ex rel. Alsaker v. CentraCare Health Sys., Inc.*, 2002 WL 1285089, at *2 (D. Minn. June 5, 2002) ("Under Rule 408, evidence of conduct or statements made in compromise negotiations is inadmissible to prove liability. Although this is a rule of evidence, courts have routinely granted motions to strike allegations in pleadings that fall within the scope of Rule 408."). *But see Ocean Garden Prod. Inc. v. Blessings Inc.*, 2019 WL 396873, at *1 (D. Ariz. Jan. 29, 2019) (declining to strike contested material from the plaintiff's complaint because of "the disfavored status of motions to strike and uncertainties regarding the admissibility under Rule 408 of the material at issue"); *DWDubbell Arkansas, LLC v. Bushey*, 2020 WL 5765279, at *3 (W.D. Ark. Sept. 28, 2020) (listing cases in which various federal district courts found it premature to strike settlement-discussion allegations from a pleading).

[58] Rec. Doc. 78-1 at 3–4 .

[59] *Id.* at 3.

[60] Rec. Doc. 83.

[61] *Id.* at 6–8.

Dejarnetti.[62] Specifically, Movants seek to strike the following paragraphs, or segments thereof, from the amended counterclaim filed by Dejarnetti: ¶¶ 77, 78, 90, 96, 107, 108, 116, 121, 126.[63]

In the amended counterclaim, Dejarnetti seeks a declaratory judgment to "identify and establish the co-ownership, co-authorship, and creative contributions" of Dejarnetti to the Musical Works at issue in this litigation.[64] Dejarnetti also brings claims for breach of contract and tortious interference with contract, seeking to recover damages he allegedly incurred by "not receiving payments and royalty splits and the non-pecuniary damages of not receiving proper creative credits for the work."[65] Therefore, Dejarnetti's assertion that he has a claim of interest in the Musical Works lies at the heart of his assertion that Movants are liable to Dejarnetti for payments, royalty splits, and creative credits in connection with the Musical Works.[66]

Paragraphs 77 and 96 of the amended counterclaim specifically reference an email sent from Tim Kappel, counsel for Movants, to Dejarnetti and/or his counsel on October 12, 2018, approximately one month before this lawsuit was filed.[67] In the October 12, 2018 email, Mr. Kappel presented Dejarnetti with a settlement offer "in an effort to buy some peace between the parties."[68] In paragraph 77 of the amended counterclaim, Dejarnetti relies on this email to allege

---

[62] Rec. Doc. 78-1 at 3, 5–6.

[63] It is unclear whether the instant motion sets forth an exhaustive list of the allegations Movants seek to strike from the amended counterclaim. The Court declines to parse the amended counterclaim for additional allegations that may contain allegations of a similar nature. Accordingly, the Court addresses only those allegations which Movants clearly identify in the instant motion.

[64] Rec. Doc. 77 at 21–22.

[65] *Id*. at 24.

[66] *Id.* at 13, 23–25.

[67] The complaint in this action was filed on November 20, 2018. Rec. Doc. 1. Additionally, emails from counsel for Movants indicate that settlement negotiations in this matter began as early as August 2017. *See* Rec. Doc. 78-3.

[68] Rec. Doc. 78-2 at 2.

that Mr. Kappel acknowledged that "Wilberto Dejarnetti had a claim to interests in the works."[69] In doing so, Dejarnetti clearly relies on statements made during settlement discussions to prove the validity of his claim. Similarly, in paragraph 96 of the amended counterclaim, Dejarnetti characterizes the October 12, 2018 email as a communication "to discuss a resolution of the contract dispute" and references specific terms set forth in the settlement offer.[70] Because Federal Rule of Evidence 408 prohibits Dejarnetti from relying on statements made during settlement negotiations to prove the validity of his claim, these allegations are immaterial and must be stricken pursuant to Federal Rule of Civil Procedure 12(f). Accordingly, the Court strikes paragraph 77 and 96 of the amended counterclaim in full.

In paragraph 78 of the amended counterclaim, Dejarnetti states that Mr. Kappel "knew, and had long known, that producer and co-author Wilberto Dejarnetti possessed copyright, royalty-split payment, and creative-credit interests in the song, with the dispute being the amounts."[71] In paragraph 90, Dejarnetti again squarely references settlement discussions with counsel for Movants to assert that counsel for Movants "argued falsely and misleadingly that the contributions of Wilberto Dejarnetti had been '*de minimus*'."[72] Again, Dejarnetti relies on statements allegedly made during settlement negotiations to prove the validity of his claim. Therefore, these allegations are immaterial and must be stricken pursuant to Federal Rule of Civil Procedure 12(f). Accordingly, the Court strikes paragraphs 78 and 90 of the amended counterclaim in full.

---

[69] Rec. Doc. 78 at 14.

[70] Rec. Doc. 77 at 17.

[71] *Id.* at 14.

[72] *Id.* at 15–16.

Similarly, paragraphs 108, 116, 121, and 126 contain the following assertion: "As stated in detail above, [Movants'] attorney Tim Kappel e-mailed several demands that Wilberto Dejarnetti must sign agreements retroactively designating already completed work as work made for hire, and Wilberto Dejarnetti consistently refused to do so because none of the work was or ever had been a work made for hire."[73] For the reasons described above, such statements are immaterial and must be stricken from paragraphs 108, 116, 121, and 126.

Movants also challenge paragraph 107 of the amended counterclaim. Paragraph 107 reads as follows:

> As set forth above in detail, Wilberto Dejarnetti was a co-author of the musical composition "Best Beeleevah", which was the song recorded for release as a sound recording, where the copyright of the musical composition has not been registered and the copyright of the sound recording has been registered as Copyright Reg. No. SR000841349, at issue here. Wilberto Dejarnetti was producer, director, creative director, musical director, and choreographer for the *Big Freedia* live show for which he extensively re-worked the song "Best Beeleevah", replacing a sample for which clearance could not be obtained, and he arranged the song for a live musical band. For the "Best Beeleevah" sound recording specifically, Wilberto Dejarnetti served as producer for the recording sessions which recorded his arrangement of the musical composition which he extensively co-authored. Wilberto Dejarnetti served as producer, director, and choreographer of the music video for "Best Beeleevah". Wilberto Dejarnetti therefore had clear authorship or co-authorship status for the unregistered musical composition and music video, and the registered sound recording of "Best Beeleevah".[74]

Unlike the other allegations identified by Movants in the instant motion, paragraph 107 does not specifically reference any settlement discussions. Accordingly, the Court declines to strike paragraph 107 of the amended counterclaim.

## V. Conclusion

Considering the foregoing reasons,

---

[73] *Id.* at 19–23.

[74] *Id.* at 19.

**IT IS HEREBY ORDERED** that the "Motion to Strike"[75] is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** to the extent that Movants seek to strike from the amended counterclaim specific paragraphs, or portions thereof, that reference statements made during settlement negotiations. The Motion is **DENIED** to the extent that Movants seek to strike allegations from the amended counterclaim that do not reference statements made during settlement negotiations.

**IT IS FURTHER ORDERED** that paragraphs 77, 78, 90, and 96 are stricken from the amended counterclaim filed by Dejarnetti.[76] The following sentence repeated at paragraphs 108, 116, 121, and 126 is also stricken from the amended counterclaim: "As stated in detail above, [Movants'] attorney Tim Kappel e-mailed several demands that Wilberto Dejarnetti must sign agreements retroactively designating already completed work as work made for hire, and Wilberto Dejarnetti consistently refused to do so because none of the work was or ever had been a work made for hire."[77]

**NEW ORLEANS, LOUISIANA,** this 22nd day of January, 2021.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[75] Rec. Doc. 78.

[76] Rec. Doc. 77 at 13–17.

[77] *Id.* at 19–23.