UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDDIE ROSS, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO:   18-11277** |
| **WILBERTO DEJARNETTI** | **SECTION: "G" (4)** |

## ORDER

Before the Court is a **Motion to Fix Attorney's Fees (R. Doc. 141)** filed by Plaintiff Freddie Ross, Jr. and Counter-Defendants Big Freedia Enterprises, LLC, and Queen Diva Music, LLC seeking an order from the Court fixing attorneys' fees in the amount of $1,650.00. The motion is not opposed. The motion was submitted on January 27, 2021 and was heard on the briefs.

### I.   Background

On November 20, 2018, Plaintiff Freddie Ross, Jr. ("Ross"), known in the music and entertainment industry as "Big Freedia", filed this copyright action seeking a declaration of rights in connection to certain sound recordings, musical compositions, and choreographic work. R. Doc. 1. Ross alleges that in 2014 he hired Dejarnetti to create stage choreography for some of Ross's songs, namely—"Just Be Free Intro", "NO Bounce", "Explode", "Shake Session Medley", "Dangerous", "Best Beeleevah", and "Drop" (Collectively "Choreographic Works"). *Id.* Dejarnetti ultimately became a character on Ross's reality television series, *Queen of Bounce*. *Id.*

In 2017, Ross and Dejarnetti suffered a falling-out. *Id.* Ross alleges the breakdown of this relationship was due to the outlandish demands of Dejarnetti, such as giving Dejarnetti credit as co-author and producer of the songs "Training Day", "Best Beeleevah", "You Already Know", and "$100 Bills" (Collectively "Musical Works"). *Id.* Ross further alleges Dejarnetti demanded $500 per month in continued use fees and that Dejarnetti refused to deliver certain music videos Ross had commissioned and paid for. *Id.*

Ross now seeks a declaration that Dejarnetti's mere presence at the recording studio does not confer Dejarnetti any authorships rights, title, or interest where he did not make any copyrightable contributions to the Musical Works. *Id.* Ross further alleges that while he worked with Dejarnetti and his dancers to create the Choreographic Works, their respective contributions merged into an inseparable and interdependent parts of a unitary whole. *Id.* As such, with regard to the Choreographic Work, Ross contends that, as a joint author, he is entitled to make use of the entire composition without Dejarnetti's permission or consent, and without further compensation. *Id.* Ross also alleges breach of contract based on Dejarnetti's failure to perform based on his refusal to deliver the edited, or unedited, video files. *Id.*

On December 1, 2020, Plaintiff Freddie Ross, Jr. filed a Motion for Sanctions seeking the Court impose sanctions against Wilberto Dejarnetti's counsel, Mark Ed. Andrews, for violations of the Protective Order and the ESI Protocol in this case. R. Doc. 108. Among other things, on January 4, 2021, the Court found that Defendant's counsel unequivocally violated the Protective Order multiple times throughout this proceeding, even using information received in this case in separate actions with different litigants. R. Doc. 138. The Court, therefore, found sanctions in the form of attorney's fees was necessary for deterrent value. R. Doc. 138, p. 13.

In connection with the Court's January 4, 2021 Order, the Plaintiff now files the instant Motion to Fix Attorney's Fees. R. Doc. 141. In his motion, Plaintiff requests that the Court fix attorney's fees against Wilberto Dejarnetti in the amount of $1,650.00. R. Doc. 140. Plaintiff contends his counsel, Tim Kappel, has a reasonable hourly rate of $300.00. R. Doc. 141-1, p. 3. In addition, Plaintiff contends he spent 11.5 hours reviewing and responding to Defendant's motion for sanctions but only seeks 5.5 hours based on his exercise of billing judgment. R. Doc. 141-1, p. 5. This motion is not opposed.

## II.    Standard of Review

The Supreme Court has specified that the "lodestar" calculation is the "most useful starting point" for determining the award for attorney's fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Lodestar is computed by ". . . the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* The lodestar calculation, ". . . provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.* Once the lodestar has been determined, the district court must consider the weight and applicability of the twelve factors delineated in *Johnson*. *See Watkins v. Forcide*, 7 F.3d 453, 457 (5th Cir. 1993).[1] Subsequently, if the *Johnson* factors warrant an adjustment, the court may make modifications upward or downward to the *Lodestar*. *Id.* However, the *Lodestar* is presumed to be a reasonable calculation and should be modified only in exceptional circumstances. *Id.* (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).

The party seeking attorneys' fees bears the burden of establishing the reasonableness of the fees by submitting "adequate documentation of the hours reasonably expended" and demonstrating the use of billing judgement. *Creecy v. Metro. Prop. & Cas. Ins. Co.*, 548 F. Supp. 2d 279, 286 (E.D. La. 2008) (citing *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997)).

## III.    Reasonable Hourly Rate

The "appropriate hourly rate . . . is the market rate in the community for this work." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir.2012)). Moreover, the rate must be calculated "at the

---

[1] The twelve *Johnson* factors are (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether fee is fixed or contingent; (7) time limitations; (8) the amount involved and results obtained; (9) the experience, reputation and ability of counsel; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974).

3

'prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation.'" *Int'l Transp. Workers Fed'n v. Mi-Das Line, SA*, 13–00454, 2013 WL 5329873, at *3 (E.D. La. Sept. 20, 2013) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Satisfactory evidence of the reasonableness of the rate necessarily includes an affidavit of the attorney performing the work and information of rates actually billed and paid in similar lawsuits. *Blum*, 465 U.S. at 896 n.11. Finally, if the hourly rate is not opposed, then it is *prima facie* reasonable. *Powell v. C.I.R.*, 891 F.2d 1167, 1173 (5th Cir. 1990) (quoting *Islamic Ctr. of Mississippi v. City of Starkville*, 876 F.2d 468, 469 (5th Cir. 1989)).

Here, Mr. Kappel graduated *cum laude* from Layola Law School where he was a member of law review and moot court. R. Doc. 141-2. Kappel specializes in sports and entertainment law and has been practicing in the music and copyright industries for over ten (10) years. *Id.* Mr. Kappel attests his hourly rate is $300.00. *Id.* The rate is not contested and therefore reasonable. *See Manuel v. Primerica Life Ins. Co.*, No. CV 19-13505, 2020 WL 7698360, at *2 (Roby, M.J.) (E.D. La. Dec. 28, 2020).

### IV. <u>Hours Reasonably Spent on Litigation</u>

Next, the Court must determine the reasonable time expended on the litigation. The party seeking the fee bears the burden of documenting and supporting the reasonableness of all-time expenditures that compensation is sought. *Hensley*, 461 U.S. at 437. The "[c]ounsel for the prevailing party should make a good faith effort to exclude from fee request hours that are excessive, redundant, and otherwise unnecessary…" *Id*. at 434. Hours that are not properly billed to one's client also are not properly billed to one's adversary. *Id*. The Supreme Court calls on fee applicants to make request that demonstrate "billing judgement". *Id*. The remedy for failing to exercise "billing judgment" is to exclude hours that were not reasonably expended. *See Hensley*, 461 U.S. at 434;

*Walker v. City of Mesquite*, 313 F.3d 246, 251 (5th Cir. 2002) (quoting *Walker v. HUD*, 99 F.3d 761, 770 (5th Cir. 1996)) ("If there is no evidence of billing judgment, however, then the proper remedy is not a denial of fees, but a reduction of 'the hours awarded by a percentage intended to substitute for the exercise of billing judgment.'"). Alternatively, this Court can conduct a line-by-line analysis of the time report. *See Green v. Administrators of the Tulane Educational Fund*, 284 F.3d 642, 662 (5th Cir. 2002) *overruled on other grounds by Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).

Plaintiff's billing records reflect four billing entries that total 11.5 hours of work between November 30, 2020 and January 6, 2021. R. Doc. 141-4. In general, the Court notes that Plaintiff's work descriptions are well-detailed and are not block-billed. *Id.* Upon, review of the billing records it appears that the hours were reasonably expended. *Id.* In addition, because Mr. Kappel only seeks 5.5 hours in connection with filing the opposition, the Court highlights the exercise of billing judgment. Moreover, the Defendant has not contested the amount of reasonable hours reasonably expended. The Court, therefore, finds that the amount of reasonably expended hours is 5.5 hours.

### I. *Lodestar* Calculation

Given the foregoing reasonable rates and hours, the Court calculates the following *Lodestar* amount for the attorney as:

| Attorney | Reasonable Hourly Rate | Reasonable Hours Expended | *Lodestar* Amount |
|---|---:|---:|---:|
| Timothy Kappel | $300.00 | 5.5 | $1,650.00 |
|  |  | **Total:** | $1,650.00 |

### V. Adjusting the *Lodestar*

After the lodestar is determined, the Court may then adjust the lodestar upward or downward depending on the twelve factors set forth in *Johnson*, 488 F.2d at 717-19. However, "the Supreme Court has limited greatly the use of the second, third, eighth, and ninth factors for enhancement

purposes, and accordingly, the Fifth Circuit has held that '[e]nhancements based upon these factors are only appropriate in rare cases supported by specific evidence in the record and detailed findings by the courts.'" *Wells Fargo Equip. Fin., Inc. v. Beaver Const., LLC*, No. CIV. 6:10-0386, 2011 WL 5525999, at *3 (W.D. La. Oct. 18, 2011) (citing *Walker v. U.S. Department of Housing and Urban Development*, 99 F.3d 761, 771–72 (5th Cir. 1996)). Finally, to the extent that any *Johnson* factors are subsumed in the lodestar, they should not be reconsidered when determining whether an adjustment to the lodestar is required. *Migis v. Pearle Vision*, Inc., 135 F.3d 1041, 1047 (5th Cir. 1998). The Court has carefully evaluated the *Johnson* factors and finds no adjustment of the lodestar is warranted.

Finally, the Court notes that because the sanction was specifically issued againt Defendant's counsel Mark E. Andrews, that Mr. Andrews, and not the Defendant shall be responsible for the payment of the fee award.

## VI.  Conclusion

Accordingly,

**IT IS ORDERED** that the Plaintiff's **Motion to Fix Attorney's Fees (R. Doc. 141)** is **GRANTED.** Plaintiff is awarded reasonable attorneys' fees and expenses in the amount of **$1,650.00**.

**IT IS FURTHER ORDERED** that the Defendant's counsel, Mark E. Andrews, shall satisfy his obligation to Plaintiff no later than **twenty-one (21) days** from the issuance of this Order.

New Orleans, Louisiana, this 10th day of February 2021.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**