## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDDIE ROSS, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-11277** |
| **WILBERTO DEJARNETTI** | **SECTION: "G"(4)** |

## ORDER AND REASONS

Plaintiff Freddie Ross, Jr. ("Ross") filed this action against Defendant Wilberto Dejarnetti ("Dejarnetti") pursuant to the United States Copyright Act, 17 U.S.C. § 101, to declare Ross's rights in connection with specific sound recordings, musical compositions, and choreographic works.[1] Dejarnetti brings counterclaims against Ross and third-party claims against Big Freedia Enterprises LLC and Queen Diva Music LLC pursuant to the United States Copyright Act to declare Dejarnetti's rights in connection with specific sound recordings, musical compositions, and choreographic works.[2]

Before the Court is Ross, Big Freedia Enterprises LLC, and Queen Diva Music LLC's (collectively, "Movants") "Motion for Partial Summary Judgment."[3] On June 9, 2021, the Court heard oral argument on the motion.[4] Considering the motion, the memoranda in support and in opposition, the arguments made during oral argument, the record, and the applicable law, the

---

[1] Rec. Doc. 1 at 1.

[2] Rec. Doc. 77.

[3] Rec. Doc. 88.

[4] Rec. Doc. 152.

1

Court grants the motion in part and denies it in part.

## I. Background

### *A.      Factual Background*

According to the Complaint, Ross is a recording actor, author, and performer known as "Big Freedia."[5] Ross and Dejarnetti allegedly worked together on various aspects of Ross's entertainment career.[6] Specifically, the parties allegedly collaborated to create stage choreography for Ross's songs, including "Just Be Free Intro," "NO Bounce," "Explode," "Shake Session Medley," "Dangerous," "Best Beeleevah," and "Drop" (collectively, the "Choreographic Works").[7] Ross also allegedly allowed Dejarnetti to direct and film a number of music videos (collectively, the "Music Videos").[8] Ross asserts that he paid thousands of dollars for Dejarnetti's services in connection with the Choreographic Works and the Music Videos.[9]

Furthermore, Ross asserts that Dejarnetti sought to involve himself in Ross's songwriting sessions.[10] Yet, according to Ross, Dejarnetti would typically arrive at the recording studio uninvited and offer unsolicited opinions concerning Ross's music.[11] Dejarnetti's conduct allegedly resulted in Ross terminating the parties' working relationship.[12] When Dejarnetti learned that Ross intended to terminate the parties' relationship, Dejarnetti allegedly started

---

[5] Rec. Doc. 1 at 1.

[6] *Id.* at 2.

[7] *Id.*

[8] *Id.* at 3, 6.

[9] *Id.* at 3.

[10] *Id.*

[11] *Id.*

[12] *Id.*

making "outlandish claims and demands" to Ross—including claiming credit as a co-author and producer of certain songs, namely "Training Day," "Best Beeleevah," "You Already Know," and "$100 Bills" (collectively, the "Musical Works").[13]

Yet, according to Ross, Dejarnetti "contributed nothing to the Musical Works that would come close to copyrightable subject matter."[14] Ross seeks a declaratory judgment concerning his ownership rights in the Choreographic Works and Musical Works.[15] Ross also seeks to recover damages resulting from Dejarnetti's alleged breach of contract in connection with the Music Videos.[16]

## B.    *Procedural Background*

On November 20, 2018, Ross filed a complaint against Dejarnetti in this Court.[17] Ross encountered multiple difficulties serving the complaint upon Dejarnetti, resulting in multiple extensions of time to serve.[18] On August 23, 2019, the Court granted Ross's "Motion to Effect Service Through Alternative Means."[19] On September 5, 2019, a summons issued to Dejarnetti was returned as executed.[20]

On October 16, 2019, Dejarnetti filed a motion to dismiss.[21] On April 16, 2020, the Court

---

[13] *Id.* at 3–4.

[14] *Id.*

[15] *Id.* at 4–5.

[16] *Id.* at 6.

[17] *Id.* at 1.

[18] *See* Rec. Docs. 4, 6, 6-1, 7, 8, 8-1, 9, 10.

[19] Rec. Doc. 11.

[20] Rec. Doc. 12.

[21] Rec. Doc. 16.

denied Dejarnetti's motion to dismiss.[22]

On May 2, 2020, Dejarnetti filed an "Answer, Defenses, & Counterclaim with Jury Demand" in response to the complaint filed by Plaintiff.[23] On August 5, 2020, with leave of Court, Dejarnetti filed an "Amended Counterclaim & Third-Party Claims, with Jury Demand" against Movants.[24] In the amended counterclaim, Dejarnetti brings claims against Movants pursuant to the United States Copyright Act to declare Dejarnetti's rights in connection with specific sound recordings, musical compositions, and choreographic works.[25] Dejarnetti seeks a declaratory judgment in part to "identify and establish the co-ownership, co-authorship, and creative contributions" allegedly made by Dejarnetti to the Musical Works.[26] Dejarnetti also brings claims against Movants for breach of contract and tortious interference with contract under Louisiana law.[27]

## II. Parties' Arguments

### A.   *Movants' Arguments in Support of the Motion*

Movants seek summary judgment on the federal copyright claims raised in the Counterclaim and dismissal of the remaining state law claims without prejudice.[28] Movants assert that the undisputed facts establish: (1) Dejarnetti's joint authorship claims with respect to the Musical Works fail as a matter of law; (2) there is no justiciable controversy with respect to

---

[22] Rec. Doc. 42.

[23] Rec. Doc. 44.

[24] Rec. Doc. 77.

[25] *Id.*

[26] *Id.* at 20.

[27] *Id.*

[28] Rec. Doc. 88 at 1.

Dejarnetti's joint authorship of the Music Videos; and (3) Dejarnetti has failed to fix the Choreographic Works in a tangible medium of expression, and, therefore, the choreography has no copyright protection.[29] If the Court grants summary judgment on these issues, Movants contend that the only remaining claims will involve novel issues of state law, and Movants argue that the Court should decline to exercise supplemental jurisdiction over these claims.[30]

First, Movants contend that the evidence adduced in discovery reveals that Dejarnetti cannot support the essential elements of his claim to joint authorship of the Musical Works.[31] Although the Fifth Circuit has never articulated a specific test for determining joint authorship under the Copyright Act, Movants argue that district court decisions within the Fifth Circuit have universally followed the Second Circuit's opinions in *Childress v. Taylor*[32] and *Thomson v. Larson*,[33] as well as the Seventh Circuit's opinion in *Erickson v. Trinity Theatre, Inc.*[34] Movants assert that these cases make clear that to prevail on a joint authorship claim Dejarnetti must show: (1) that his alleged contributions to the compositions and the recordings were independently copyrightable; and (2) that Ross intended for Dejarnetti to be a joint author of said works.[35] Movants argue that Dejarnetti cannot make either showing.[36]

With respect to the first prong of joint authorship, Movants assert that Dejarnetti's

---

[29] Rec. Doc. 88-1 at 1.

[30] *Id.* at 2.

[31] *Id.* at 7.

[32] 945 F.2d 500 (2d Cir. 1991).

[33] 147 F.3d 195 (2d Cir. 1998).

[34] 13 F.3d 1061 (7th Cir. 1994).

[35] Rec. Doc. 88-1 at 14.

[36] *Id.*

contributions consisted of: (1) directions, ideas, coaching, suggestions, and refinements, which Movants contend are not copyrightable subject matter;[37] and (2) words and phrases within the songs, which Movants contend are far too short to be protectable.[38] With respect to the second prong of joint authorship, Movants assert that Ross's consistent refusal to pay Dejarnetti or share in the benefits of the exploitations of the Compositions and Recordings is strong evidence that cuts against joint authorship.[39] Movants also point to Dejarnetti's admission that he was never given "creative credit for the services rendered" in connection with the Compositions and Recordings.[40] Additionally, Movants contend that Ross had no obligation to accept Dejarnetti's contributions and remained free to reject them without restriction.[41] Therefore, even if some of Dejarnetti's contributions are independently copyrightable, Movants argue that Dejarnetti's claims for joint authorship over the Musical Works still fails.[42]

Second, Movants argue that Dejarnetti's claim for a declaration of authorship in the Music Videos is not justiciable.[43] Movants assert that Ross has never challenged Dejarnetti's joint ownership of the Music Videos.[44] Accordingly, Movants argue that there is not a justiciable

---

[37] *Id.* at 15–17 (citing *Erickson*, 13 F.3d at 1072).

[38] *Id.* at 15–17 (citing 37 C.F.R. § 202.1; *Emanation Inc. v. Zomba Recording Inc.*, 72 F. App'x 187, 191 (5th Cir. 2003)).

[39] *Id.* at 19.

[40] *Id.*

[41] *Id.* at 20.

[42] *Id.*

[43] *Id.* at 21.

[44] *Id.*

controversy to adjudicate.[45]

Third, Movants contend that the Choreographic Works lack copyright protection.[46] Movants assert that Dejarnetti admitted that he did not write the Choreographic Works down.[47] Without evidence that the Choreographic Works were fixed by Dejarnetti in a tangible medium of expression, Movants argue there can be no copyright dispute over the authorship of the Choreographic Works because there is no copyright protection.[48]

Finally, if the Court grants summary judgment on the federal copyright claims, Movants assert that the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.[49] Movants contend that Dejarnetti presents novel questions of state law.[50] Additionally, given the limited discovery that has been completed, Movants argue that judicial economy, fairness, and comity weigh in favor of declining to exercise supplemental jurisdiction over the state law claims.[51]

**B.     *Dejarnetti's Arguments in Opposition to the Motion for Partial Summary Judgment***

In response, Dejarnetti notes that discovery has not been completed and Ross has not been deposed.[52] Dejarnetti contends that a critical issue presented in the motion "is whether Ross-Freedia intended to give or withhold from Wilberto Dejarnetti the creative credits, payments, and

---

[45] *Id.*

[46] *Id.*

[47] *Id.* at 22.

[48] *Id.*

[49] *Id.*

[50] *Id.* at 23.

[51] *Id.* at 24.

[52] Rec. Doc. 92 at 2.

percentages which serve as dispositive indicators of whether Ross-Freedia intended or contemplated that Wilberto Dejarnetti would be a joint author."[53]

Dejarnetti contends that he should be considered a joint author because he served "as a producer or co-producer, director or co-director, co-writer, choreographer, or other roles which are known and are standard in the industry and which customarily warrant joint-authorship status."[54] According to Dejarnetti, Movants were free to reject Dejarnetti's authorship contributions, but Movants were not free to change them.[55] Dejarnetti asserts that Movants instead chose to circumvent the agreement entirely.[56] Dejarnetti contends that the evidence shows that he both asserted and exercised complete authority over his work, and Ross neither asserted nor exercised any authority over Dejarnetti's work, which Dejarnetti argues is an indication that the work was joint authorship.[57] Furthermore, Dejarnetti contends that the evidence shows that significant partial payments for the work were made.[58]

Next, Dejarnetti asserts that the teaching, rehearsing, and performing of his Choreographic Works were fixed in the tangible medium of video recordings which were broadcast nationally and internationally and are easily available for download.[59] Therefore, Dejarnetti contends that the claims regarding the Choreographic Works should not be dismissed because the choreography

---

[53] *Id.*

[54] *Id.* at 5.

[55] *Id.* at 8.

[56] *Id.* at 9.

[57] *Id.* at 10.

[58] *Id.* at 11.

[59] *Id.* at 6.

was fixed in a tangible medium.[60]

In addition to the arguments made in his memorandum, at oral argument Dejarnetti argued that *Childress* and progeny do not define the nature of the necessary intent to be a co-author. Dejarnetti asserted that the informal agreement between Movant and Dejarnetti was for Dejarnetti to be a joint author. When asked to point to specific evidence demonstrating the parties' intent that Dejarnetti would be a co-author, Dejarnetti directed the Court to an unsigned contract between the parties.[61]

## C.   *Movants' Arguments in Further Support of the Motion*

In reply, Movants contend that Dejarnetti failed to respond to all but four of Movants' uncontested material facts, and the four that were addressed were not effectively controverted.[62] Therefore, Movants assert that those facts should be deemed admitted for purposes of deciding this motion.[63] Additionally, Movants argue that Dejarnetti has not shown that additional discovery is needed to respond to the motion.[64] Movants note that Dejarnetti did not comply with the requirements of Federal Rule of Civil Procedure 56(d), which requires a non-movant to show by affidavit or declaration that it cannot present facts essential to justify its opposition without additional discovery.[65] Movants contend that Dejarnetti did not file an affidavit setting forth the specific facts needed to oppose the Motion, making his request deficient on its face.[66]

---

[60] *Id.* at 7.

[61] Rec. Doc. 97-2 (Exhib. A).

[62] Rec. Doc. 98 at 2.

[63] *Id.*

[64] *Id.* at 3.

[65] *Id.*

[66] *Id.* at 4.

Next, Movants contend Dejarnetti has failed to offer any facts or law to plausibly suggest that his alleged contributions to Musical Works are independently copyrightable.[67] Moreover, Movants assert that there is no evidence of a mutual intent to create a joint work.[68] Accordingly, Movants assert that summary judgment on this issue is appropriate.[69]

Movants repeat their prior argument that the claims regarding the Music Videos are not justiciable because Ross never challenged Dejarnetti's status as a joint author of the Music Videos.[70] Finally, Movants contend that there is no evidence Dejarnetti fixed the Choreographic Works in a tangible medium of expression.[71] Movants aver that the clips from the reality show are not "copies" of the Choreographic Works because they do not illustrate, depict, or describe the Choreographic Works in such a way that the works can be performed in a consistent and uniform manner.[72] Additionally, Movants note that the contract Dejarnetti entered vested all copyrights from Dejarnetti's services with the producer of the reality show.[73]

At oral argument, Movants stipulated that Dejarnetti is a joint author of the Music Videos. However, Movants argued that Dejarnetti cannot satisfy the two elements of the co-authorship test as to the Musical Works. First, Movants asserted that Dejarnetti's contributions are de minimis and, thus, not independently copyrightable. Second, Movants contended that Dejarnetti cannot show that Movants intended Dejarnetti to be a co-author because (1) Dejarnetti conceded

---

[67] *Id.*

[68] *Id.*

[69] *Id.* at 6.

[70] *Id.*

[71] *Id.*

[72] *Id.* at 7.

[73] *Id.*

he did not share in the benefits of the works; (2) Dejarnetti conceded that he received no credit for the works; and (3) Dejarnetti cannot produce a written agreement demonstrating that Movants intended Dejarnetti was a co-author. Movants asserted that, under *Childress*, joint authorship rules prevent minor contributors from trying to share in the benefits of the efforts of the sole author. In the absence of a contract, Movants argued that copyright remains with the one who created the work, and that other parties must protect their own rights through contract.

As to the Choreographic Works, Movants asserted that Movants do not believe Movants have any ownership interest because there is no fixed work and because of the production agreement with non-party World of Wonder.

### III. Legal Standard

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[74] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[75] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[76] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment

---

[74] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[75] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[76] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

as a matter of law.[77] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[78]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[79] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[80] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[81] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[82] Rather, a factual dispute precludes a grant of summary judgment only if the evidence presented by the nonmovant is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[83] Further, a court "resolve[s] factual controversies in favor of the nonmoving party, but only when there is an actual

---

[77] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[78] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[79] *Celotex*, 477 U.S. at 323.

[80] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

[81] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

[82] *Little*, 37 F.3d at 1075.

[83] *Anderson*, 477 U.S. at 248.

controversy, that is, when both parties have submitted evidence of contradictory facts."[84] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[85] Ultimately, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[86]

## IV. Analysis

Movants seek summary judgment on the federal copyright claims raised in the Counterclaim and dismissal of the remaining state law claims without prejudice.[87] Movants assert that the undisputed facts establish: (1) Dejarnetti's joint authorship claims with respect to the Musical Works fail as a matter of law; (2) there is no justiciable controversy with respect to Dejarnetti's joint authorship of the Music Videos; and (3) Dejarnetti has failed to fix the Choreographic Works in a tangible medium of expression, and, therefore, the choreography has no copyright protection.[88] If the Court grants summary judgment on these issues, Movants assert that the only remaining claims will involve novel issues of state law, and Movants contend that the Court should decline to exercise supplemental jurisdiction over these claims.[89] The Court addresses each of these issues in turn.

### A.    *Musical Works: Joint Authorship Claims*

---

[84] *Little*, 37 F.3d at 1075.

[85] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[86] *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

[87] Rec. Doc. 88 at 1.

[88] Rec. Doc. 88-1 at 1.

[89] *Id.* at 2.

According to Movants, Dejarnetti's joint authorship claims with respect to the Musical Works fail as a matter of law because Dejarnetti cannot show that his contributions to the Musical Works were independently copyrightable or that Ross intended for Dejarnetti to be a joint author of said works.[90] Dejarnetti contends that he should be considered a joint author because he served "as a producer or co-producer, director or co-director, co-writer, choreographer, or other roles which are known and are standard in the industry and which customarily warrant joint-authorship status."[91]

Section 101 of the Copyright Act defines a "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."[92] "Parts of a unitary whole are 'inseparable' when they have little or no independent meaning standing alone."[93] "By contrast, parts of a unitary whole are 'interdependent' when they have some meaning standing alone but achieve their primary significance because of their combined effect, as in the case of the words and music of a song."[94] "The touchstone of the statutory definition 'is the intention at the time the writing is done that the parts be absorbed or combined into an integrated unit.'"[95]

Section 201 of the Copyright Act instructs when a copyright vests in an author and provides the ownership status of authors in joint works.[96] Section 201(a) states: [C]opyright in a

---

[90] Rec. Doc. 88-1 at 14.

[91] Rec. Doc. 97 at 5.

[92] 17 U.S.C. § 101.

[93] *Childress*, 945 F.2d at 505.

[94] *Id.*

[95] *Thomson*, 147 F.3d at 199 (internal citations omitted).

[96] 17 U.S.C. § 201.

work protected under this title vests initially in the author or authors of the work. The authors of a joint work are co-owners of a copyright in the work."[97] Co-authors are entitled "to equal undivided interests in the whole work—in other words, each joint author has the right to use or to license the work as he or she wishes, subject only to the obligation to account to the other joint owner for any profits that are made."[98]

The Fifth Circuit has not articulated a specific test for determining joint authorship under the Copyright Act. However, district courts within the Fifth Circuit have followed the guidance set forth by the Second Circuit in *Childress v. Taylor*[99] and *Thomson v. Larson*,[100] as well as the Seventh Circuit in *Erickson v. Trinity*.[101] Under this approach, "a co-authorship claimant bears the burden of establishing that each of the putative co-authors (1) made independently copyrightable contributions to the work; and (2) fully intended to be co-authors."[102] Collaboration alone is insufficient to establish joint authorship; instead, the contributions of each author must be independently copyrightable.[103] Additionally, the authors must intend to be joint authors.[104] "Care must be taken . . . to guard against the risk that a sole author is denied exclusive authorship

---

[97] *Id.* § 201(a).

[98] *Thomson*, 147 F.3d at 199 (internal citations omitted).

[99] 945 F.2d at 500.

[100] 147 F.3d at 200.

[101] 13 F.3d at 1068–69. *See also S. Credentialing Support Servs., LLC v. Hammond Surgical Hosp. LLC*, No. 15-7013, 2017 WL 6540410 (E.D. La. Dec. 21, 2017) (Milazzo, J.); *Aillet, Fenner, Jolly & McClelland, Inc. v. U.L. Coleman Co.*, No. 09-2016, 2012 WL 4450977 (W.D. La. Sept. 25, 2012) (Stagg, J.); *Visitor Indus. Publ'ns, Inc. v. NOPG, L.L.C.*, 91 F. Supp. 2d 910 (E.D. La. 2000) (Vance, J.); *BTE v. Bonnecaze*, 43 F. Supp. 2d 619 (E.D. La. 1999) (Porteous, J.).

[102] *Thomson*, 147 F.3d at 200 (citing *Childress*, 945 F.2d at 504).

[103] *Id.* (citing *Childress*, 945 F.2d at 507).

[104] *Id.* (citing *Childress*, 945 F.2d at 509).

status simply because another person render[s] some form of assistance."[105] This test "ensure[s] that true collaborators in the creative process are accorded the perquisites of co-authorship and . . . guard[s] against the risk that a sole author is denied exclusive authorship status simply because another person rendered some form of assistance."[106]

In the seminal case *Childress v. Taylor*, the Second Circuit considered a claim for joint authorship of a play.[107] Actress Clarice Taylor recruited playwright Alice Childress to write a script based on the life of legendary comedienne Jackie "Moms" Mabley.[108] After Childress completed the script, Taylor produced it at another theater without permission.[109] Childress sued Taylor for copyright infringement, and Taylor asserted a defense of co-authorship.[110] The Second Circuit concluded that there was "no evidence that [Taylor's contribution] ever evolved into more than the helpful advice that might come from the cast, the directors, or the producers of any play."[111] Therefore, the Second Circuit upheld the district court order granting summary judgment for Childress.[112]

With this background in mind, the Court must analyze whether there is evidence in the record to show that (1) Dejarnetti made independently copyrightable contributions to the work;

---

[105] *Id.* at 202 (quoting *Childress*, 945 F.2d at 504). *See also Erickson*, 13 F.3d at 1069 ("Those seeking copyrights would not seek further refinement that colleagues may offer if they risked losing their sole authorship.").

[106] *Childress*, 945 F.2d at 504.

[107] *Id.* at 500.

[108] *Id.* at 503.

[109] *Id.*

[110] *Id.* at 504.

[111] *Id.* at 509.

[112] *Id.*

and (2) Ross and Dejarnetti fully intended to be co-authors.

### 1.    Whether Dejarnetti's Contributions were Independently Copyrightable

Movants contend that Dejarnetti cannot establish that his contributions to the Musical Works were independently copyrightable. During his deposition, Dejarnetti testified that he wrote the lyrics to "Best Beelevah" and "You Already Know."[113] Dejarnetti testified that the music video for "$100 Bills" used his version of the song.[114] According to Dejarnetti, "the versions that [he] did are what the music videos were shot to. They weren't shot to Freedia's demos."[115] Dejarnetti also testified that he produced the recording sessions for "Best Beelevah" and "Training Day."[116] According to Dejarnetti, during the session he told members of the band how to perform:

> More of this, more singing, screen more, and I told the girls to add some extra lyrics and that they did. They—they were already going to perform some stuff that they did live that we had made up. But I gave them a couple of little extra whoop, whoops, and hoot, hoots in Training Day.[117]

Dejarnetti also testified as follows:

> So I took the stems, and I put in a minute and a half extra music and changed it around, took a vocal, swirled it around, put an effect on it, and added some synthesizers and whatever. So their two-minute song is now, like, a three-minute-something.[118]

Dejarnetti explained that he had to add instrumentation and "replace their kick because their kicks

---

[113] Rec. Doc. 88-2 at 16.

[114] *Id.* at 18.

[115] *Id.*

[116] *Id.* at 22–23.

[117] *Id.* at 23.

[118] *Id.* at 24.

weren't thick enough and weren't, you know, hard. . . . I did audio replacement on a lot of stuff because of the recording technique."[119]

Movants contend that Dejarnetti's contributions fall into two categories, neither of which are independently copyrightable: (1) directions, ideas, coaching, suggestions, and refinements; and (2) words and phrases which are too short to be protectable.[120] In support of this assertion, Movants present the Court with spliced partial clips from Dejarnetti's deposition where Dejarnetti was asked to listen to the four songs at issue in this litigation and raise his hand when he heard his contributions.[121] In response, Dejarnetti contends that Movants set up "the straw-man argument that single separate ideas, directions, words, and phrases are not given copyright protection."[122] According to Dejarnetti, "[t]he only reason Wilberto Dejarnetti spent hours answering questions about separate fragmented items is because for hours he was asked questions about separate fragmented items."[123]

Based on the limited evidence presented, the Court cannot conclude that undisputed evidence establishes that the only contributions Dejarnetti made to the Musical Works were (1) directions, ideas, coaching, suggestions, and refinements; and (2) words and phrases which are too short to be protectable. As discussed above, Dejarnetti testified that he wrote the lyrics to "Best Beelevah" and "You Already Know."[124] Dejarnetti testified that the music video for "$100

---

[119] *Id.* at 25.

[120] Rec. Doc. 88-1 at 19.

[121] Rec. Docs. 88-3, 88-4, 88-5, 88-6.

[122] Rec. Doc. 97 at 3.

[123] *Id.*

[124] Rec. Doc. 88-2 at 16.

Bills" used his version of the song.[125] Dejarnetti also testified that he added more than a minute and a half to a song by taking "a vocal, swirled it around, put an effect on it, and added some synthesizers and whatever."[126] Viewed in the light most favorable to Dejarnetti, there is evidence suggesting that the contributions Dejarnetti made to the songs could be independently copyrightable.

### 2.     Whether Ross and Dejarnetti Intended to be Co-Authors

Movants assert that Dejarnetti cannot present any evidence to show that Ross intended for Dejarnetti to be a co-author.[127] On the other hand, Dejarnetti contends that the evidence shows that he and Ross intended that they would be co-authors.[128]

In *Childress*, the Second Circuit recognized that "[i]n many instances, a useful test will be whether, in the absence of contractual arrangements concerning listed authorship, each participant intended that all would be identified as co-authors."[129] However, the Second Circuit later expanded on this concept, finding that "the intention standard is not strictly subjective."[130] Therefore, co-authorship intent does not turn solely on the parties' own words or professed state of mind."[131] Instead, the Court must conduct "a more nuanced inquiry into factual indicia of ownership and authorship, such as how a collaborator regarded herself in relation to the work in

---

[125] *Id.* at 18.

[126] *Id.* at 24.

[127] Rec. Doc. 88-1 at 17–21.

[128] Rec. Doc. 97 at 9–12.

[129] *Childress*, 945 F.2d at 508.

[130] *Thomson*, 147 F.3d at 201.

[131] *Id.*

terms of billing and credit, decisionmaking, and the right to enter into contracts."[132]

Courts have considered the following factors in analyzing the intent element: "(i) the contributor's decision making authority over what changes are made and what is included in a work, (ii) the way in which the parties bill or credit themselves with regard to the work, (iii) any written agreements with third parties, and (iv) any other additional evidence."[133]

Generally, summary judgment is disfavored when issues of intent or state of mind are involved because those determinations are inherently a question of fact which turns on credibility.[134] However, a court is not precluded from granting summary judgment where elusive concepts such as motive or intent are at issue.[135] The Fifth Circuit has cautioned that "the court must be vigilant to draw *every* reasonable inference from the evidence in the record in a light most flattering to the nonmoving party."[136] For example, summary judgment may still be appropriate when intent or state of mind is at issue if the non-moving party merely rests on conclusory allegations or unsupported speculation.[137]

Notably, as of this briefing, Ross had not been deposed and the Court does not have the benefit of his testimony regarding intent. Nevertheless, Dejarnetti has pointed to some evidence

---

[132] *Id.*

[133] *BTE v. Bonnecaze*, 43 F. Supp. 2d 619, 624–25 (E.D. La. 1999)

[134] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265–66 (5th Cir. 1991) ("When state of mind is an essential element of the nonmoving party's claim, it is less fashionable to grant summary judgment because a party's state of mind is inherently a question of fact which turns on credibility.").

[135] *Id.* at 1266 ("This is not to say that the court can never enter summary judgment when intent or state of mind is at issue, only that the court must recognize that undermining the moving party's professed state of mind is not a simple task. Therefore, the court must be vigilant to draw *every* reasonable inference from the evidence in the record in a light most flattering to the nonmoving party." (emphasis in original)).

[136] *Id.* (emphasis in original).

[137] *Id.*

that could suggest that Ross intended Dejarnetti to be a co-author. For example, an initial deal memo dated February 15, 2014, states that "[t]he work of Bert Company that is done for Big Freedia's Live Show or campaign cannot be duplicated, modified, or owned by any other entity other than Bert Company (Independent Contractor) without acquiring written consent from Bert Company."[138] This memo suggests that Dejarentti exercised complete control over the work he did for Movants.

In 2017, Dejarnetti was paid $18,270.00 in 11 payments for work on several different songs, music videos, and live shows.[139] On August 18, 2017, Movants' attorney emailed Dejarnetti stating, "Freedia asked me to get in touch regarding contracts for your work. . . . Freedia wants me to assure you that he will negotiate in good faith next week."[140] In a text-message exchange on March 2, 2018, Ross told Dejarnetti, "I have no problem with giving credit [w]here credit is do [sic]. I told you that before if you remember."[141] In a text-message exchange on October 23, 2018, Ross acknowledged that they "never signed anything to say I'll pay this monthly fee we only verbally agreed."[142] Some of these emails and text messages are presented without context. Therefore, it is difficult for the Court to evaluate what agreements and payments the parties were referring to in these correspondences. Ross and Dejarnetti's professional relationship spanned over three years and included work on several different projects. The Court cannot guess whether these correspondences were about the Musical Works at issue here.

---

[138] Rec. Doc. 97-2 at 2.

[139] Rec. Doc. 97-4.

[140] Rec. Doc. 97-3.

[141] Rec. Doc. 97-17 at 15.

[142] *Id.* at 6.

Nevertheless, when viewed in the light most favorable to Dejarnetti, there is some evidence suggesting that Ross and Dejarnetti intended that Dejarnetti would be a co-author of the Musical Works. Therefore, there are genuine issues of material fact in dispute and Movants are not entitled to judgment as a matter of law.

**B.    Music Videos: Whether Summary Judgment Is Appropriate on Dejarnetti's Claim for a Declaration of Authorship in the Music Videos**

Next, Movants argue that Dejarnetti's claim for a declaration of authorship in the Music Videos is not justiciable.[143] Movants assert that Ross has never challenged Dejarnetti's joint ownership of the Music Videos.[144] Accordingly, Movants argue that there is not a justiciable controversy to adjudicate.[145] Dejarnetti does not respond to this argument.

A declaratory judgment action is justiciable, or "ripe for adjudication only where an 'actual controversy' exists."[146] Generally, an actual controversy exists where "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests."[147] In a declaratory judgment suit,

> [a] controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that *may never develop*.[148]

A district court must address on a case-by-case basis whether the facts are sufficiently immediate

---

[143] Rec. Doc. 88-1 at 21.

[144] *Id.*

[145] *Id.*

[146] *Orix Credit All.*, 212 F.3d at 895 (quoting 28 U.S.C. § 2201(a)).

[147] *Id.* (quoting *Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986)).

[148] *Rowan Cos. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) (quoting *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967)) (emphasis added).

to establish an actual controversy.[149]

Movants submit that they do not contest that Dejarnetti is a joint author of the Music Videos. Dejarnetti, in his briefing and at the evidentiary hearing, has pointed to no facts demonstrating that Movants dispute he is a joint author of the Music Videos. Therefore, the Court finds that there is not an actual controversy between the parties and their dispute is not sufficiently immediate. Thus, the Court concludes that Dejarnetti's claim seeking a declaration that he is a joint author of the Music Videos is not justiciable. Given that this claim is not yet ripe for adjudication, the Court will dismiss Dejarnetti's claim as to the Music Videos without prejudice.

## C.    *Choreographic Works: Whether the Choreography Can Be Protected by Copyright*

Movants contend that the Choreographic Works lack copyright protection.[150] Movants assert that Dejarnetti admitted that he did not write the Choreographic Works down.[151] Without evidence that the Choreographic Works were fixed by Dejarnetti in a tangible medium of expression, Movants argue there can be no copyright dispute over the authorship of the Choreographic Works because there is no copyright protection.[152] In response, Dejarnetti asserts that the teaching, rehearsing, and performing of his Choreographic Works were fixed in the tangible medium of video recordings which were broadcast nationally and internationally and are easily available for download.[153] In reply, Movants contend that the clips from the reality show are not "copies" of the Choreographic Works because they do not illustrate, depict, or describe

---

[149] *Id.*

[150] *Id.*

[151] Rec. Doc. 88-1 at 22.

[152] *Id.*

[153] Rec. Doc. 97 at 6.

the Choreographic Works in such a way that the works can be performed in a consistent and uniform manner.[154] Additionally, Movants note that the contract Dejarnetti entered vested all copyrights from Dejarnetti's services with the producer of the reality television show.[155]

Section 102(a) of the federal Copyright Act protects "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."[156] The Copyright Act goes on to define works of authorship to include "choreographic works."[157] "A work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced or otherwise communicated for a period of more than transitory duration."[158]

Absent evidence that the Choreographic Works were fixed by Dejarnetti in a tangible medium of expression, Movants argue there can be no copyright dispute over the authorship of the Choreographic Works because there is no copyright protection.[159] There are facts in dispute regarding whether the Choreographic Works were fixed in a tangible medium of expression— specifically, by video recording. At least some of the Choreographic Works were recorded by video. Moreover, it is unclear to the Court whether the Choreographic Works and the Music

---

[154] Rec. Doc. 98 at 7.

[155] *Id.*

[156] 17 U.S.C. § 102; *see also Motion Med. Techs., LLC v. Thermotek, Inc.*, 875 F.3d 765, 773 (5th Cir. 2017).

[157] 17 U.S.C. § 102(a)(4).

[158] *Id.* § 101.

[159] Rec. Doc. 88-1 at 22.

Videos were in fact the same choreography, as Dejarnetti suggests.[160] The U.S. Copyright Office has provided guidance that video recordings are acceptable formats of fixation for choreographic works.[161] When viewed in the light most favorable to Dejarnetti, there is some evidence suggesting that the Choreographic Works were recorded. Therefore, the Court concludes that summary judgment must be denied on this issue.

## V. Conclusion

For the reasons set forth above, there are genuine issues of material fact in dispute precluding summary judgment on Dejarnetti's claims regarding the Musical Works and the Choreographic Works. However, because no party has contested Dejarnetti's joint ownership of the Music Videos, there is not a justiciable controversy to adjudicate. Therefore, Dejarnetti's claim seeking a declaratory judgment that he is a joint author of the Music Videos must be dismissed as a matter of law. Because the Court has not dismissed all of the federal claims in this litigation, it will continue to exercise supplemental jurisdiction over the state law claims.[162] Accordingly,

**IT IS HEREBY ORDERED** that Freddie Ross, Jr., Big Freedia Enterprises, LLC, and Queen Diva Music, LLC's "Motion for Partial Summary Judgment"[163] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent it seeks dismissal of Dejarnetti's claim for a declaratory judgment that he is a joint author of the Music Videos. The

---

[160] *See* Rec. Doc. 97 at 7 ("There is no meaningful distinction to be made here in this case between the fixing of choreography for the live stage show, the fixing of choreography for the music videos, and the fixing of choreography for the reality TV show.").

[161] U.S. Copyright Office, Copyright Registration of Choreography and Pantomime, available at https://www.copyright.gov/circs/circ52.pdf (last visited May 4, 2021).

[162] *See* 28 U.S.C. § 1367.

[163] Rec. Doc. 97-4.

motion is **DENIED** in all other respects.

      **IT IS FURTHER ORDERED** that Dejarnetti's claim for a declaratory judgment that he is a joint author of the Music Videos is **DISMISSED WITHOUT PREJUDICE**.

      **NEW ORLEANS, LOUISIANA,** this  30th  day of July, 2021.

                              _____
                              **NANNETTE JOLIVETTE BROWN**
                              **CHIEF JUDGE**
                              **UNITED STATES DISTRICT COURT**